UNITED STATES of America,
Plaintiff-Appellee,

v.

Glen Thomas GORDON,
Defendant-Appellant.

Nos. 75-3693, 76-1338.

United States Court of Appeals,
Ninth Circuit.

Aug. 2, 1976.

Frank V. Gregorcich (argued), San Diego, Cal., for defendant-appellant.

Stephen W. Peterson, Asst. U. S. Atty. (argued), Terry J. Knolpp, U. S. Atty., Stephen W. Peterson, Asst. U. S. Atty., on the brief, San Diego, Cal., for plaintiff-appellee.

OPINION

Before DUNIWAY and CARTER, Circuit Judges, and BURNS,* District Judge.

JAMES M. CARTER, Circuit Judge.

The issue in this appeal is the propriety of a warrantless search of appellant Gordon's residence by his probation officer and policemen. We affirm.

On January 29, 1973, Gordon was convicted of the offense of possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). He was at that time placed on probation pursuant to 18 U.S.C. § 5010(a) for a period of three years on condition that he obey all laws, that he comply with all lawful rules of the Probation Department, that he not possess or use narcotics or associate with known users of or dealers in narcotics, that he not enter Mexico, and that he be committed to the custody of the Attorney General to serve six months in a jail-type institution. It was further ordered that Gordon,

> "shall submit to search of his person, home, or vehicle at any time of the day or night by any law enforcement or other authorized officer without their need for a search warrant, such condition to remain in effect until the defendant shall be duly discharged from probation."

On December 20, 1974, Gordon was released from custody and placed under the

---

* Honorable James M. Burns, United States District Judge for the District of Oregon, sitting by designation.

supervision of Probation Officer Micelli. From about December 27, 1974 onward, Micelli received information from a confidential informant on several occasions that Gordon was engaged in the distribution of amphetamines in the San Francisco Bay area. Micelli had contacts with the informant generally on a once-a-month basis. In mid-May 1975, Micelli was contacted by agents from the Narcotics Task Force, who stated that Gordon might be involved in dealing in controlled substances.

On May 28, 1975, Gordon saw Micelli for his periodic report. Gordon requested permission to travel to San Francisco. Micelli told Gordon to return the next day with details of his trip, and Micelli would give him a travel permit.

The next day Gordon reported to Micelli's office. Micelli and two other probation officers, with the consent of Gordon, searched his car. They found nothing. At about 10:30 a. m., Micelli called Agent Becker of the San Diego Narcotics Task Force, advising Becker that he had in his office one of his (Micelli's) probationers, Gordon, and that he (Micelli) wished assistance in going to Gordon's residence for the purpose of searching for contraband.

Subsequent to this call Micelli, another probation officer, probationer Gordon, Agent Becker and another agent, all proceeded to Gordon's residence. The actual search was conducted by the Narcotics Task Force agents. The agents found three firearms and a small amount of marijuana.

Gordon was convicted and sentenced on three counts of possession of firearms by a convicted felon, 18 U.S.C.App. § 1202(a)(1), and one count of misdemeanor possession of a controlled substance, 21 U.S.C. § 844. Probation for the earlier offense was also revoked.

We hold that the search was proper pursuant to the guidelines set forth by this court en banc in *United States v. Consuelo-Gonzalez*, 521 F.2d 259 (9 Cir. 1975). *Consuelo-Gonzalez* involved a probation condition similar to the condition in the case at bar, but the search in that case was conducted solely by police officers and without the participation or direction of appellant's probation officer. The court found that "the only permissible conditions [on probation] are those that, when considered in context, can reasonably be said to contribute significantly both to the rehabilitation of the convicted person and to the protection of the public." *Id.* at 264. In *Consuelo-Gonzalez* the conviction was reversed on the grounds that the search was not for the purpose of rehabilitation because it was conducted by police officers not under the immediate and personal supervision of probation officers.

However, the court specifically approved the type of search involved in the case at bar. *Consuelo-Gonzalez* at 267 states:

"Moreover, nothing said here is intended to preclude mutually beneficial cooperation between probation officers and other law enforcement officials. For example, a proper visitation by a probation officer does not cease to be so because he is accompanied by a law enforcement official. . . . However, under no circumstances should cooperation between law enforcement officers and probation officers be permitted to make the probation system 'a subterfuge for criminal investigations.' "

There is nothing in the record in this case to suggest that this search was not a search conducted in a proper manner and for a proper purpose by Gordon's probation officer. The Narcotics Task Force agents accompanied the probation officer for the sole reason to expedite the search. The search was initiated by the probation officer after the probation officer had received information that Gordon was violating the conditions of his probation. "Thus this case is not one in which the parole officer was a stalking horse for the police." *Latta v. Fitzharris*, 521 F.2d 246, 247 (9 Cir. 1975). *Compare United States v. Hallman*, 365 F.2d 289, 292 (3 Cir. 1966), and *People v. Coffman*, 2 Cal.App.3d 681, 689, 82 Cal. Rptr. 782 (1969).

Gordon also argues that the evidence should have been suppressed because the

authorization for the search, which provided for a search by "any law enforcement officer", was overbroad. We note that the terms of probation were fixed over two years prior to the holding in *Consuelo-Gonzalez*. That case established the proper language for future probation orders, but it did not invalidate prior, broader orders which would be narrowly and properly exercised. We hold that because the broad authorization was narrowly and properly exercised, the search in this case was proper.

AFFIRMED.