UNITED STATES of America, Appellee,

v.

George L. BRADLEY, Appellant.

No. 77–1826.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 8, 1977.

Decided Feb. 23, 1978.

Robert B. Smith, III, Richmond, Va. (Hundley, Harris & Smith, Richmond, Va., on brief), for appellant.

N. George Metcalf, Asst. U. S. Atty., and Alexandra E. Divine, Third Year Law Student, Richmond, Va., on brief, for appellee.

Before HAYNSWORTH, Chief Judge, WINTER, Circuit Judge, and FIELD, Senior Circuit Judge.

WINTER, Circuit Judge:

George Bradley was convicted of violating 18 U.S.C. § 922(h)(1), which makes unlawful the receipt of a firearm by one previously convicted of a crime punishable by imprisonment for more than one year. On appeal, Bradley contends that the five-year suspended sentence entered in his conviction should be reversed because the firearm found in his possession, and later introduced over objection at trial, was seized in the course of an unlawful search. Because we agree that the warrantless search of defendant's room by his parole officer was in violation of rights secured to him by the fourth amendment, we reverse.

### I.

In 1972, Bradley was convicted under the Virginia maiming statute, Va.Code § 18.2–51, and sentenced to a term of imprisonment. In April 1976, he was released on parole and took up residence in a boarding house in Richmond, Virginia. The conditions of his parole included, *inter alia,* that he obey all federal, state and municipal laws, that he refrain from possessing any firearm without permission, and that he "permit [his] Parole Officer to visit [his] home or place of employment." Not included in the conditions of parole was consent to searches conducted during such visits.

In the early morning hours of October 9, 1976, Karen Murphy, Bradley's parole officer, received a series of calls from Bradley's landlady and her son (also a parolee) informing Murphy that Bradley was in possession of a loaded firearm. In order to determine if Bradley was in fact violating a condition of his parole, Murphy, accompanied by another parole officer, went to Bradley's boarding house at approximately nine o'clock in the morning, some six hours after receiving knowledge of the possible violation. Without securing either a search warrant or Bradley's consent, Murphy conducted a thorough search of Bradley's room. There, she found a loaded firearm wrapped in a shirt inside a suitcase which was located behind a door.

Murphy seized the weapon and delivered it to federal investigators who determined that the firearm had been transported in interstate commerce before coming into Bradley's possession. In addition to having his parole revoked by the Virginia Probation and Parole Board, Bradley was indicted and tried for violating the federal firearms laws. He was convicted on a single count. A five-year suspended sentence was imposed, and Bradley was placed on five years' probation to begin upon his release from state custody.

At trial, the district court denied defendant's motion to suppress the firearm as the fruit of an unlawful search. On appeal, Bradley's only assignment of error is the denial of this motion and the related refusal of the district court to exclude the firearm from evidence.

### II.

Bradley contends that the unconsented search of his room by parole officer Murphy was in violation of the fourth amendment for the reason that Murphy failed to secure a warrant prior to conducting the search.[1]

---

1. It is not disputed by Bradley that parole officer Murphy had probable cause to obtain a warrant. Murphy's informants were known to her and were themselves in a position to have personal knowledge of the information that they supplied her. Additionally, they were specific in the information given, indicating that a loaded firearm was in Bradley's possession. *See generally Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). While probable cause existed, we do not imply that the probable cause for a warrant to search a parolee's person or home is as demanding as the probable cause for a warrant to search a suspect's person or home in an ordinary criminal investigation. We address only the applicability of the warrant requirement.

In arguing that a warrantless search was permissible, the government urges that we follow the Ninth Circuit's recent decision in *Latta v. Fitzharris,* 521 F.2d 246, *cert. denied,* 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975), and hold that the fourth amendment does not require a warrant when a parole officer conducts a search of his parolee's residence. The basic theory of that decision is that a parolee is in constructive custody; and while that custody does not excuse the necessity for a warrant under all circumstances, the fact of constructive custody and the rehabilitative purposes of parole do not make a warrantless search of a parolee's residence unreasonable in the fourth amendment sense when a parole officer has some basis (less than the usual probable cause) to conduct the search. We are not persuaded to adopt this view. We think that Judge Hufstedler's well-reasoned dissent in *Latta,* 521 F.2d at 254–259, represents the preferable approach. We therefore hold that unless an established exception to the warrant requirement is applicable, a parole officer must secure a warrant prior to conducting a search of a parolee's place of residence even where, as a condition of parole, the parolee has consented to periodic and unannounced visits by the parole officer.[2]

In holding that a parole officer need not secure a warrant before conducting a search of his parolee's residence, the majority in *Latta* relied heavily on two cases in the administrative-search context in which the Supreme Court held the warrant requirement to be inoperative. *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972); *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970).[3] For the reasons

discussed in Judge Hufstedler's dissenting opinion, 521 F.2d at 255, we find the reliance on *Biswell* and *Colonnade* to be misplaced. Both represent narrow exceptions to the general rule announced in *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), that warrants *are* required prior to conducting administrative searches.

In *Camara,* a city health official charged with the responsibility of inspecting residences to ensure compliance with minimum housing standards was denied entrance by a homeowner subject to such standards. The homeowner was subsequently convicted for refusing to allow the inspection. The Supreme Court vacated the conviction, concluding that, while the governmental interest in securing compliance was great and the likelihood of abuse small, a warrant was nonetheless required once the homeowner refused voluntarily to permit the inspection. Later, in *Biswell* and *Colonnade,* the Court announced an exception to the *Camara* rule where congress has expressly authorized warrantless administrative searches and where either the authorizing statute or a subsequent regulation limits the administrative discretion to search. *See United States v. Biswell, supra,* 406 U.S. at 317, 92 S.Ct. 1593.

While parole searches may indeed be analogous to administrative searches in that the governmental interest in supervision is great and the parolee's privacy interest is diminished by the fact of constructive custody, nonetheless there is no statutory authorization or guidelines, state or federal, to bring the instant case within the *Biswell-Colonnade* exception. We therefore conclude that *Camara,* requiring as it does pri-

2. It is by now accepted that a parolee, despite a reduced expectation of privacy, comes within the ambit of the fourth amendment's protection against unreasonable searches and seizures. *See, Latta v. Fitzharris, supra,* 521 F.2d at 248. Since the government makes no assertion to the contrary, we do not belabor the point.

3. Judge Duniway, in his plurality opinion, also relied upon *Wyman v. James,* 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971), where the Supreme Court held that a welfare caseworker need not secure a warrant before visiting the home of one seeking or receiving welfare payments. There is no contention here that Murphy needed a warrant in order to visit Bradley. What is objected to is the search in the course of the visit, a subject on which *Wyman* is silent.

or judicial approval to unconsented searches even in the face of reduced privacy interest, is the more persuasive authority.

The majority in *Latta* also placed great emphasis on the special relationship between the parolee and his parole officer and on society's interest in having the parolee closely and properly supervised. It concluded that the warrant requirement would be unreasonably disruptive of this system. 521 F.2d at 250–51. We, however, disagree. While we recognize the important governmental interests at stake, we conclude that they have the effect of diminishing the rigorousness of the standard of cause which the parole officer must satisfy to obtain a warrant, not of removing the judicial protection which the warrant requirement interposes between the parole officer and the search.[4] *See Camara v. Municipal Court, supra,* 387 U.S. at 534–38, 87 S.Ct. 1727. As Judge Hufstedler points out in her dissent, abuse of discretion is more easily prevented by prior judicial approval than by *post hoc* judicial review. 521 F.2d at 257.

Since we hold that the necessity for a warrant was not excused by the mere fact that the search was conducted by a parole officer of her parolee's residence, albeit with probable cause, it is appropriate that we consider whether any established exception to the warrant requirements of the fourth amendment is applicable. *See Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Defendant did not consent to the search. It was not a

search incident to a valid arrest, and the gun was not in plain view. The only exception that the government suggests is applicable to this case is that embraced by the rubric "exigent circumstances." Under this exception, there are certain judicially-recognized instances where it is unreasonable to require an officer to take the time to secure a warrant before conducting the search. *See, e. g., Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Because parole officer Murphy waited six hours after receiving information of the secreted weapon before conducting the search, it cannot be said that exigent circumstances here justified circumventing the warrant requirement.[5]

Accordingly, we reverse the judgment of the district court and direct the entry of a judgment of acquittal.[6]

*REVERSED AND REMANDED.*

---

**4.** Judge Duniway's plurality opinion in *Latta* suggests that even a mere "hunch" will support a search in the parole context. 521 F.2d at 250. A majority of the Ninth Circuit, however, expressly disavows this position. *See* 521 F.2d at 253. The better rule is that, while the standard of cause may be reduced, some articulable grounds must still be advanced. *See United States v. Smith,* 395 F.Supp. 1155, 1159 (W.D. N.Y.1975).

**5.** Under Virginia law parole officers are not among those to whom a search warrant may be issued. Va.Code § 19.2–56. As a result, a parole officer must seek the assistance of a police officer in order to secure a warrant. In the proper case this procedure may be relevant

to a finding of exigent circumstances. In the instant case, however, the parole officer waited six hours before conducting the search. Even under the constraints imposed by Virginia practice, that presented ample time for a warrant to be secured.

**6.** While we reverse Bradley's conviction under 18 U.S.C. § 922(h)(1) because his fourth amendment rights were violated by the warrantless search, we express no view of the effect, if any, of what we decide on the revocation of Bradley's parole. That question is one of state law to be decided by a state court. *Cf. United States v. Cates,* 402 F.2d 473 (4 Cir. 1968).