No. 14437

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

THE STATE OF MONTANA,

            Plaintiff and Respondent,

    -vs-

WILLIAM EDWARD FOGARTY,

            Defendant and Appellant.

---

Appeal from:  District Court of the Fourth Judicial District,
              Honorable Jack L. Green, Judge presiding.

Counsel of Record:

    For Appellant:

        Morales, Volinkaty & Harr, Missoula, Montana
        Bruce Harr argued, Missoula, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Allen B. Chronister argued, Assistant Attorney General,
         Helena, Montana
        Douglas G. Harkin, County Attorney, Hamilton, Montana

---

                        Submitted:  March 13, 1979

                        Decided: APR 2  1979

Filed:    APR 2  1979

Thomas J. Kearney
                              Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Defendant appeals from an order of the Ravalli County District Court revoking a ten-year suspended sentence and ordering him to prison. Defendant remains free on his own recognizance pending this appeal.

Defendant attacks the order revoking his suspended sentence on the grounds that the revocation order was based upon the results obtained from a search of his home and a polygraph examination administered to him. The search was conducted pursuant to an unlimited search provision, and the polygraph examination was performed pursuant to an unlimited polygraph examination provision both of which were placed in the original judgment as conditions of probation. Defendant attacks these provisions on several constitutional grounds.

There is no statutory authority directly authorizing either of the two questioned provisions. Section 46-18-201(b), MCA, however, permits a trial court, when placing a person on probation, to impose any reasonable restrictions on the defendant during the period of probation. These conditions must, of course, be reasonably related to the rehabilitation of the defendant or the protection of society. Section 46-18-201 (a)(1), MCA. Furthermore, section 46-18-202, MCA, is a broad grant of authority permitting a trial court to impose additional restrictions which may be considered necessary to carry out the dual objectives of rehabilitation of the defendant and the protection of society. Imposition of conditions under the express or implied authority of the statutes, must, of course, comply with the broad objectives for the laws of punishment contained in our constitution. Article II, Section 28 provides that "[l]aws for the punishment of crime shall be founded on the principles of prevention and reformation . . . ." For two cases interpreting these statutory provisions,

-2-

see State v. Babbitt (1978), ____ Mont. ____, 574 P.2d 998, 35 St.Rep. 154; and State v. Petko (1978), ____ Mont. _____, 581 P.2d 425, 35 St.Rep. 908.

Balanced against express or implied statutory sentencing powers are federal and state constitutional provisions which must be considered as part of the sentencing process. Needless to say, a sentence imposed under a liberal interpretation of a sentencing statute which in itself grants broad sentencing powers to a trial court does not necessarily pass constitutional muster. Constitutional provisions may well have a countervailing influence on the legality of the sentence imposed.

We have not directly ruled on the constitutionality of a search provision, and we have not ruled upon or even discussed the constitutionality of a polygraph provision. In relation to search provisions however, in State v. Means (1978), ____ Mont. ____, 581 P.2d 406, 35 St.Rep. 673, dicta in the majority opinion would seem to hold that a search provision is not constitutionally offensive. We note, however, that the opinion turned on the conclusion that probable cause to search existed independent of the search provision. To the extent that Means can be interpreted as permitting an unlimited search provision as a condition of probation, it is hereby expressly overruled.

The circumstances underlying the imposition of the questioned provisions shed little light on why the conditions were imposed. The search and polygraph provisions were inserted in the judgment in this case as part of a ten-year suspended sentence given to defendant after he had entered a guilty plea to selling a lid of marijuana to an acquaintance. Also required as part of this sentence was that defendant spend weekends for a year in the county jail.

-3-

The presentence investigation report prepared by the probation officer recommended that a warrantless search provision and a polygraph provision be placed in the judgment if the court saw fit to suspend the sentence. The report recommended that law enforcement officers have the right to search defendant's person or his residence or vehicle at any time, and also that the defendant subject himself to a polygraph examination whenever the probation officer made the demand. The challenged provisions in the judgment provide:

> "b.  That the defendant shall submit to a search of his person, premises or vehicles at any time by lawful authorities, without a search warrant.

> "c.  That the defendant shall submit to a polygraph examination by qualified examiners at any time, upon the request of any law enforcement officer and the results of such examination may be used in Court, without objection by the Defendant, against the Defendant in any proceeding in which the Defendant is involved."

Defendant raises other issues, but we dispose of this appeal by deciding that the unlimited polygraph condition is overly broad and thus an invalid condition of probation, and that the unlimited warrantless search warrant is an unconstitutional condition of probation.

The record is silent as to why the trial court imposed either of the conditions. It is possible, of course, that it relied upon the recommendations of the probation officer but even those recommendations provide no insight as to why the probation officer considered them to be necessary or desirable. At the hearing on the petition to revoke the suspended sentence, we are provided a glimpse as to why the probation officer recommended the polygraph condition, but nothing in relation to the search provision. While being cross-examined by defense counsel the following exchange appears:

> "A.  What was the purpose of having the polygraph condition?

-4-

"B.  Well, it's a condition that we have
recently imposed, for, well, I don't know,
just to go along with the system, I guess."

The reference to the "system" is left unexplained.

The same hearing transcript provides a little insight
as to the trial court's attitude toward a polygraph condition,
but nothing as to why he thought such condition to be
necessary in this case.  During an exchange with defense
counsel after the trial court had denied all of defendant's
motions and ruled that defendant was in violation of his
probation, the trial court stated:

"THE COURT:  Well, I understand your position,
and you may have that in the Supreme Court.
If I couldn't have put a condition like this
on this man, he would be in the prison today,
and if the Supreme Court says we can't do it,
there will be a lot more going to prison."

The search provision in the judgment substantially
follows the probation officer's recommendation; but the
polygraph provision in the judgment extended the recommendation
that the probation officer have the right to demand a polygraph
examination to permit "any law enforcement officer" to demand
a polygraph examination at any time.  The transcript of the
original sentencing is not before this Court, and thus we cannot
tell whether the local prosecutor or the sheriff recommended
the expanded language in the polygraph provision, or whether
it was simply inserted in the judgment at a later time.  The
clerk of court's minutes reflect only that a search provision
and polygraph provision were to be imposed as conditions of
probation.  It is customary, however, for the county attorney
to prepare the judgment of conviction after the formal
sentencing, and it appears that he expanded upon the recommenda-
tion of the probation officer by making himself as well as
other law enforcement officers the beneficiaries of the
right to demand that defendant take a polygraph examination.

-5-

With this background of the search and polygraph provisions, we proceed next to a summary of the events occurring between the time of original imposition of the search and polygraph conditions and the time defendant's probation was revoked.

One of the conditions of the ten-year suspended prison sentence was that defendant spend weekends in jail for one year. Weekends were ordered so that defendant could have regular employment during the week. But shortly after he was sentenced, defendant was offered employment as an outfitter during big game hunting season, which required that he also be gone on weekends. He approached the local sheriff and they agreed that defendant would spend no time in jail during the hunting season, but at the termination of his employment, defendant would make up the lost weekends by serving a continuous period in the county jail.

During the time defendant was out on probation, the sheriff or his deputies came to defendant's home and place of employment more than 20 times to check on his activities. The record does not reflect whether they conducted any searches of his home during his absence. But they were ready for him when he returned home at the termination of his outfitting employment.

While defendant was working as an outfitter, a friend of his was living in and taking care of defendant's home. Defendant had, while employed as an outfitter, returned home once or twice a month. Defendant returned home at approximately 6:30 a.m. on October 22, 1977, after having worked all night, and the same day at approximately 1:00 p.m., the sheriff and his deputy came to the defendant's home and, pursuant to the authority conferred by the warrantless search provision searched the defendant's home.

-6-

The search uncovered some marijuana, but defendant's friend immediately assumed responsibility for it and claimed it was his. The officers apparently accepted this claim of ownership for they did nothing to implicate defendant at this time. On this same day defendant, in compliance with the agreement with the sheriff, turned himself in to the Ravalli County jail to commence serving a continuous 26-day jail sentence. It was while defendant was in jail that the county attorney invoked the polygraph examination provision and demanded that defendant take the examination.

Defendant received an out of state employment offer while he was serving the 26 days, and he therefore filed a motion in District Court asking the court to reduce the suspended sentence and modify the condition as to jail time. This motion started the wheels spinning in relation to the former search which the sheriff had made of the defendant's home. The county attorney invoked the polygraph provision and demanded that before the trial court take any action on defendant's motion to change the sentence, that defendant take a polygraph examination in relation to the marijuana which had been seized by the sheriff pursuant to the warrantless search provision. Defendant was sent to Columbia Falls to be examined by Richard Walch, a former law enforcement officer.

The examiner ran two tests on defendant. Between the first and second test he accused the defendant of not telling the truth in relation to his personal use of marijuana while on probation. In response to this accusation defendant admitted that while on probation he had occasionally used marijuana. The examiner then ran the second test and the results, he concluded, were consistent with defendant's assertion that although he had occasionally used marijuana, he had nothing to do with the marijuana found in his home

-7-

pursuant to the sheriff's warrantless search. The examiner then sent the test results to the county attorney.

Based on the admissions by defendant that he occasionally used marijuana while on probation the county attorney filed a petition to revoke defendant's probation and send him to prison. Before the hearing, however, defense counsel filed a motion to suppress the testimony to be offered in relation to finding the marijuana in defendant's home and the testimony of the polygraph examiner as to the defendant's admission to him while in the course of conducting the polygraph examinations. Defendant urged several constitutional grounds, but the trial court, without ever addressing the defendant's contentions, overruled them and ruled that defendant had violated the conditions of his probation.

We are provided no insight as to what evidence the trial court relied upon in determining that defendant had violated his conditions of probation. It simply declared that defendant had violated his conditions of probation, and upon that basis revoked the suspended sentence and ordered him to prison. The trial court did, however, change the sentence to a degree. After revoking the ten-year suspended sentence, it suspended two of the ten years. Defendant then orally announced his intention to appeal, and the trial court released him on his own recognizance pending the outcome of this appeal.

Defendant first contends that the unlimited warrantless search clause provision violates his Fourth Amendment rights under the United States Constitution and also violates the right of privacy and search and seizure provisions of the 1972 Mont. Const., Art. II, §§10 and 11. He takes an absolutist position that these constitutional provisions absolutely forbid any kind of warrantless search provision as a condition

-8-

of probation. Most of the cases he cites, however, at lease impliedly uphold the constitutionality of a warrantless search provision, but have struck down the particular clauses involved as being overly broad and thus in violation of the probationer's Fourth Amendment rights. We recognize, however, that these cases were not decided on particular search and seizure provisions of state constitutions, and neither did the cases face an express "right of privacy" provision as set forth in our own constitution.

In relation to the warrantless search provision, the State presents an equally absolutist contention that any warrantless search provision, no matter how broad, is per se constitutional. The State argues that a person laboring under a conviction and not yet released from State supervision, even though not in actual physical custody, has no constitutional rights at all. This absurd position is unworthy of further discussion. The real thrust of the State's argument, however, is a recognition that the warrantless search clause imposed in this case is unconstitutional, but that one which is properly framed and properly limited, can and should pass constitutional muster.

The State suggests five factors which can be considered and added into the tailoring of a warrantless search clause to satisfy constitutional objections. First, the right to search should be limited to parole or probation officers or law enforcement officers searching at the request of the parole or probation officer; second, that any search must be reasonable as to time, place and manner of execution; third, that searches should be permitted only if there is an underlying factual foundation justifying the search (a type of probable cause); fourth, that the uses to which the products

-9-

of a search can be put should be strictly limited; and fifth, that no search provision can be used as an instrument of harassment or intimidation. Unfortunately, however, the State fails to apply this criteria to the search clause imposed here, for such application would require a determination that it is unconstitutional.

First, the search warrant was not limited to a parole or probation officer; rather, it permitted any law enforcement officer to conduct the search. Second, the provision did not limit searches to reasonableness in terms of time, place and manner of conducting the search; rather, it permitted a search at any time the mood should strike. Third, the provision did not contain some form of underlying probable cause before one could conduct a search; rather, it permitted a search with no cause whatsoever. Fourth, the provision did not limit the uses to which the products of a warrantless search could be put; rather, it was silent as to the extent of use of the products of a search. Fifth, it did not specify that a search could not be used for purposes of harassment or intimidation. Clearly, by the State's suggested standards, the warrantless search clause imposed here struck out on all counts. As we shall later explain our holding, the search provision imposed here is patently unconstitutional.

The thrust of defendant's attack on the polygraph examination provision is that it constitutes both an illegal search and seizure and a violation of his rights against self-incrimination. He contends that both the federal and state constitutions are violated. As to the illegal search and seizure contention, defendant has provided no authority. Nor do we believe, as we understand those terms, that a search and seizure in the constitutional sense, is involved. But

-10-

requirement that defendant provide answers to questions asked of a polygraph examiner certainly has the potential of requiring the probationer to incriminate himself. The question however, is whether the probationer has the same rights as a person not laboring under such a disability.

The right of the State to impose a search provision or polygraph provision on a probationer exists only to the extent that a probationer can legitimately be denied his full constitutional protections and guarantees as a result of his status as a probationer. The argument most often advanced in the face of a claim that a probationer's constitutional rights were abridged, is that a defendant standing before a court for sentencing and having accepted the probationary conditions without objection, has waived his rights to later assert that any of the conditions imposed may be unconstitutional. But a waiver theory ignores the realities of the situation.

Regardless of the condition imposed, if that is the sentencing court's decision, the probationer has little or no say in the matter. He can refuse to accept the conditions imposed and go to prison, or he can accept the conditions and remain in society subject to the State's supervision for the probationary period. A waiver theory however, does not comport with the requirements of Johnson v. Zerbst (1938), 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, that a waiver is invalid unless it be made knowingly, intelligently, and voluntarily. A choice cannot be termed voluntary where the alternative is prison and even more restrictions. As the Court stated in State v. Page (1976), 115 Ariz. App. 131, 564 P.2d 82, a defendant does not choose whether he is going to prison or will be placed on probation; that choice is primarily that of the sentencing court.

Nor can it be reasonably argued that for purposes of probation, a probationer is in constructive custody and therefore he can be subjected to the same impositions on his freedoms as can one actually in jail or prison. The simple fact is, as the Page court noted, a probationer is for the most part existing in the mainstream of society and he may well be living with family or friends whose rights also must be respected.

On the other hand, if probation is to be successful, the rights of the probationer must be balanced with those of society. In this context, a probationer must expect that his constitutional rights may be justifiably limited during the probationary period for he cannot reasonably expect that he will be as free as a citizen not suffering such a disability. We agree with the Page court, therefore, that a search provision can be appropriately tailored to and "reasonably related to the prevention of future criminal activity." And the same is true of a polygraph provision. A probationer has no right to expect that he is entitled to the same self-incrimination protections as is a person not operating under such disability.

In State v. Age (1979), 38 Or. App. 501, 590 P.2d 759, the court rejected a probationer's argument that a polygraph provision violated her rights against self-incrimination. In holding that a probationer had a statutory duty to "answer all reasonable inquiries of the probation officer" the Court plugged this duty into the requirement that the probationer take a polygraph examination:

> ". . . Since the probationer must answer all reasonable inquiries of the probation officer or risk revocation, we see no impermissible extension of that condition in requiring that

-12-

the probationer submit to polygraph tests.
The intrusion into the area of self-incrim-
ination is no greater; its main function
appears to be the added psychological factor
that if the probationer fails to tell the
truth, he will be detected.  Such purpose would
be in furtherance of a successful probation."
590 P.2d at 763.

The reference in Age, to the duty of the probationer

to answer "all reasonable inquiries of the probation

officer or risk revocation,. . ."  has a statutory basis

in Oregon (Ors 137.540(1)(e) cited in Age, 590 P.2d at 763.)

No statute in this State directly imposes such a duty on a

probationer.  Nonetheless, a probation program could hardly

be successful if it did not require a probationer to answer

all reasonable inquiries of his probation officer.  The added

factor that a polygraph examination may occasionally be used

while in the process of requiring these reasonable inquiries,

does not offend the self-incrimination provisions of the

federal or state constitution.

The vital questions in relation to search provisions

or polygraph examination provisions, compel this Court to

subject the provisions to "special scrutiny" to determine

whether or not they are tailored to and fall within the ambit

of a reasonable limitation on the probationer's "otherwise

inviolable constitutional rights."  In recognizing this duty,

the court in United States v. Consuelo-Gonzalez (9th Cir.

1975), 521 F.2d 259, stated:

". . . it must be recognized that probationers,
like parolees and prisoners, properly are subject
to limitations from which ordinary persons are
free, it is also true that these limitations in
the aggregate must serve the ends of probation.
Conditions that unquestionably restrict otherwise
inviolable constitutional rights may properly be
subject to special scrutiny to determine whether
the limitation does in fact serve the dual objectives
of rehabilitation and public safety."  521 F.2d
at 265.

-13-

Indeed, when asked to rule on particular polygraph provisions or search provisions, most courts have subjected these provisions to "special scrutiny."

Implicit in the search and polygraph provisions imposed in this case is an assumption that the prosecuting attorney and law enforcement officials are an integral part of the probation process and thus have the duty to guard and guide the probationer through the probationary process until state supervision has terminated. But neither the prosecuting attorney nor the police are part of the probationary process. One of the primary focal points in subjecting these provisions to "special scrutiny" is an examination of the provisions to determine who is given the right to demand a polygraph examination or to conduct a search. Many decisions have determined that the probation officer must be the person about whom the rights to conduct a polygraph examination, or to conduct a search, must revolve.

In State v. Hovater (Or. App. 1978), 37 Or. App. 557, 588 P.2d 56, as part of a plea bargain defendant agreed to take a polygraph examination either upon the demand of the district attorney or the state police. This agreement was incorporated into the judgment and later the district attorney invoked its provision and demanded a polygraph examination. The probationer attacked the provision itself, claiming that it violated her rights against self-incrimination. Although the appellate court rejected this claim, it declared in effect that neither the district attorney nor the state police are part of the probation process and thus have no right to demand that a probationer take a polygraph examination:

> "The district attorney and the police are not part of the probation process. They have no direct responsibility to supervise probation or to facilitate rehabilitation of the defendant.

-14-

> Their primary responsibility is to ferret
> out crime and to prosecute the offender.  In
> the give and take of plea negotiations the
> district attorney does not necessarily have
> rehabilitation in mind when negotiating the
> terms of probation.  He may simply be attempting
> to facilitate future investigation of crimes.
> . . ."  588 P.2d at 59.

The courts have applied the same kind of "special scrutiny" to search provisions in holding that only the probation officer or a police officer at his special request and direction, should be entitled to conduct a search imposed against a defendant as a condition of probation.

The search provision imposed here would permit not just the probation officer but any "lawful authorities" to search the probationer's home, his person, or his vehicle, at any time, and in any place and manner, and for no other reason than the mere whim or caprice of whomever decided to conduct a search.  In Tamez v. State (Tex. Ct. of Crim. App. 1976), 534 S.W.2d 686, the Court struck down a warrantless search provision in all essentials similar to the one under attack in this case.  In holding the search provision too broad in scope and thus in violation of the probationer's Fourth Amendment rights (as well as a violation of the Texas Constitution) the court aptly characterized its effect:

> "The condition imposed would literally permit
> searches, without probable cause, or even
> suspicion, of the probationer's person, vehicle
> or home at any time, day or night, by any peace
> officer, which could not possibly serve the ends
> of probation.  For example, an intimidating and
> harassing search to serve law enforcement ends
> totally unrelated to either his prior conviction
> or his rehabilitation is authorized by the
> probationary condition."  534 S.W.2d at 692.

We can say no less about the effect of the warrantless search provision imposed in this case; it permitted any law enforcement official to search the defendant, his home, or his vehicle, whenever the mood struck.  Such a provision is too great an infringement upon the probationer's rights under the federal and state constitutions.

-15-

Unlimited searches as a condition of probation or parole have received the unequivocal condemnation of many courts. For example, federal decisions include: United States v. Jeffers (9th Cir. 1978), 573 F.2d 1074; United States v. Bradley (4th Cir. 1978), 571 F.2d 787 (holding by implication); and United States v. Consuelo-Gonzalez (9th Cir. 1975), 521 F.2d 259. And, state courts have done likewise. For example: Tamez v. State, supra; State v. Fisher (1978), 32 Or. App. 465, 574 P.2d 354, rev. den. 283 Or. 99 (1978); State v. Holm (1978), 34 Or. App. 503, 579 P.2d 860; State v. Batson (1978), 35 Or. App. 175, 580 P.2d 1066; State v. McGivney (1978), 36 Or. App. 885, 585 P.2d 767; People v. Jackson (1978), 46 N.Y.2d 171, 385 N.E.2d 621; Basaldua v. State (Tex. 1977), 558 S.W.2d 2; and People v. Huntley (1977), 43 N.Y.2d 175, 371 N.E.2d 794. Several of the above cases have also discussed the situation where a parole or probation officer searches when a search provision has not been imposed by the sentencing court as a condition of probation. Needless to say, unlimited searches under this situation have also been held to be constitutionally offensive.

One primary focal point of the special scrutiny to which search provisions are subjected is to examine who are named as beneficiaries in the condition of probation as having the right to search. Several courts have directly or indirectly held that law enforcement officers have no place in the probation process and thus cannot be primary beneficiaries of a search provision. The sentencing court cannot provide this connection by thus naming law enforcement officers as having the right to search pursuant to the search provision. Federal decisions include: United States v. Consuelo-Gonzalez, supra (implied ruling); United States v. Bradley, supra (implied ruling); and

-16-

United States v. Workman (4th Cir. 1978), 585 F.2d 1205 (implied ruling). State decisions include: Tamez v. State, supra (implied ruling); State v. Fisher, supra (implied ruling); Roman v. State (Alaska 1977), 570 P.2d 1235 (direct ruling); and People v. Anderson (Colo. 1975), 536 P.2d 302 (direct ruling).

As we have previously stated, prosecuting attorneys and law enforcement officers are not involved in the probation process, and therefore a sentencing court may not permit them to search pursuant to either a warrant requirement or a warrantless search provision imposed as a condition of probation. To do so constitutes an infringement of one's rights under the Fourth Amendment of the United States Constitution and Art. II, §§10 and 11 of our own constitution. The sentencing court cannot inject prosecuting attorneys or law enforcement officials into the probation process by granting them direct rights to search the probationer, his home, or his vehicle.

Nor is the mere whim or caprice of the probation officer sufficient to trigger the decision to search under a search provision. Several courts have directly or indirectly ruled that some kind of cause requirement must first be met before a search can be validly conducted. Federal cases include: United States v. Consuelo-Gonzalez, supra (direct ruling); Latta v. Fitzharris (9th Cir. 1975), 521 F.2d 246 (direct ruling); United States v. Bradley, supra (direct ruling); United States v. Workman, supra (direct ruling); and United States v. Gordon (9th Cir. 1976), 540 F.2d 452 (direct ruling). State decisions include: People v. Jackson, supra (direct ruling); People v. Huntley, supra (implied ruling); State v. Fisher, supra (direct ruling); Hunter v. State (1976), 139 Ga.App. 676, 229 S.E.2d 505 (implied ruling); People v. Anderson, supra (implied ruling); and State v. Simms (1973), 10 Wash.App. 75, 516 P.2d 1088 (implied ruling).

-17-

FILED

MAY 20 1980

~~~ J. K~~~~

~~ OF SUPREME COURT
OF ~~~~~~

The problem, of course, is in arriving at an appropriate standard.

In its brief, the State suggests that "the Court should require that the probation officer have some articulable grounds for determining that a search is necessary." Without arriving at its own conclusions as to standards, the State accurately sums up the state of the existing law:

> ". . . Although the courts have been vague in formulating standards, the probation officer should have some identifiable reason that prompted him to conclude that the authority of the search clause should be exercised. This could be information received from an informant, the police or the probation officer's own observation that the probationer has resumed criminal conduct or has violated conditions of probation."

Beyond this, the State adds nothing.

Two federal cases have traveled the additional step of imposing a search warrant requirement as a condition to searching a probationer. United States v. Bradley, supra; United States v. Workman, supra. In relating a search warrant requirement to a probationer, the court in Workman stated:

> ". . . the special relationship between a parolee and his parole officer and society's interest in close supervision of the parolee serve to lower the standard for determining probable cause to obtain a search warrant but that they do not eliminate the warrant require- ment." 585 F.2d at 1207.

In New York, the legislature has set forth statutory guidelines for searching probationers and parolees. N.Y. Crim. Proc. Law §410.50 (McKinney, 1971). Section 410.50(3) allows the court to issue a search order upon a showing of reasonable cause that the probationer has violated a condition of the sentence during the period of probation. The order must be directed to the probation officer, and he may search defendant's person or any premises in which he resides or any

-18-

real or personal property which he owns or which is in his possession. The necessary condition is that a judicial officer must grant the permission to search.

Polygraph examinations as a condition of probation can be effectively contained within constitutional limits by confining the right to demand a polygraph examination to the probation officer. This will significantly reduce the potential for abuse. But confining the right to search to a probation officer only resolves part of the problem. Still unresolved are the questions of the cause requirement to conduct a search, the time, place and manner of conducting the search, and whether different standards should apply to searches of the probationer's person, the probationer's vehicle, or the probationer's home.

We recognize that probationary status can and should carry with it a reduced expectation of privacy. But a probationer is living within society, not confined to a penal institution. If the trial courts do not and will not recognize this fundamental fact of life, it then devolves upon this Court to do so. We must fashion a formula, however imperfect, which reasonably balances the competing rights of society and of the individual probationer and his family and friends. A search of a probationer's home cannot avoid invading the privacy of those with whom he may be living, whether they be immediate family, other relatives, or friends. Probationary status does not convert a probationer's family, relatives and friends into "second class" citizens.

In State v. Means, supra, Justice Daly in his dissent, raised the flag to a problem which the courts must face and hopefully satisfactorily resolve:

-19-

"I conclude with the admonition that . . .
there are many more problems related to those
mentioned herein that necessarily need con-
sideration before Montana can assume a
respectable position in the matter.  We must
also consider the rights of those who reside
with a probationer--his wife, children, mother
and others.  These problems do not go away by
just ignoring them."  581 P.2d at 417.

We can only assume a "respectable position" if we can

give fair consideration to the rights of innocent third parties

who may be caught up in the web of the probationary system or

probationary process.  These people are not stripped of their

right of privacy because they may be living with a probationer

or he may be living with them.  While a probationer's right of

privacy may be justifiably diminished while on probation, the

rights of these people are not so diminished.  We, as well as

the trial courts, would be derelict in our duties if we failed

to consider the rights of these innocent others so that they are

not swept away by the probationary process.

The potential harmful effects of unlimited sweeping

warrantless search provisions are underscored in a note entitled:

Striking the Balance Between Privacy And Supervision:  The

Fourth Amendment and Parole and Probation Officers Searches of

Parolees and Probationers (1976), 51 N.Y.U.L.Rev.  The intrusion

into the lives of family and friends as well as the probationer,

is particularly stressed:

"Fourth amendment protection will be diminished
not only for parolees, but also for the family
and friends with whom the parolee might be living.
Those bystanders may find themselves subject to
warrantless searches only because they are good
enough to shelter the parolee, and they may
therefore be less willing to help him--a sadly
ironic result in a system designed to encourage
reintegration into society.  Moreover, the
demeaning effect of arbitrary intrusions into
the parolee's privacy will be reflected in the
attitudes of his relatives and friends.  As a
result, the parolee will suffer diminished feelings
of self-worth, making his rehabilitation more
difficult.  In addition, warrantless parole officer
searches may reinforce patterns of resentment to

-20-

authority, and excessive external controls may inhibit the development of necessary internal controls: 'a person must have the freedom to be responsible if he is to become responsibly free.'" (Footnotes omitted.) 51 N.Y.U.L. Rev. at 816-817.

These privacy considerations are inextricably interwoven/ in the relationships between a probationer and his family and friends no less than in the relationships between a nonprobationer and his family and friends. The search of a probationer's home will inevitably affect the privacy of those with whom he is living.

One of the most important reasons for requiring a search warrant as a condition to a search is a recognition that reasonable restraints must be placed upon law enforcement officials before a search is conducted rather than simply to measure the validity of a search by a postsearch inquiry into its reasonableness. If abuses are to be discouraged, it does little good to provide postsearch judicial review, for this neither deters unreasonable searches nor remedies those which have occurred. Indeed, in all but the most blatant violations, the searching officers will be able to retrospectively point to specific facts which justified the search. Beck v. Ohio (1964), 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142, 147. Such is human nature, whether motivated by good or bad intentions. And that is precisely why it is considered wise if individual rights are to be valued, to place a neutral judge between the law enforcement authorities and the subject of the search. Just as the Fourth Amendment is aimed at preventing abuses, so our own constitution setting forth the ground rules for searches and seizures only upon probable cause set forth in writing has the same objective. (Art. II, §11.) Added to this protection is the "right of privacy" expressly guaranteed by Art. II, §10

-21-

of our own constitution.   If protection of these rights is to have substantive meaning, restraints must be imposed before the search is conducted.

Postsearch review of the reasonableness of a search is hardly an effective deterrent where the rights of third persons are concerned.   A determination that a warrantless search of a probationer's home was unreasonable provides no protection for third persons whose  privacy has already been invaded by the search itself.   The invasion has occurred; the damage has been done.   Recognition of this fundamental problem is one of the reasons the court in Latta v. Fitzharris (9th Cir. 1975), 521 F.2d 246, imposed a search warrant requirement.   Clearly, therefore, so that the legal interests of innocent third persons can be adequately protected and considered in the probationary process, we require that a search warrant must first be obtained, and it must be based on probable cause.

It is not necessary that the probable cause consist of the ~~probationer's~~ probation officer's personal knowledge.   He may rely on information received from law enforcement personnel or from reliable citizens.   But if he has relied on such information received from law enforcement personnel or reliable citizens, he must state in his affidavit precisely what information has been provided him.   In the case of the private citizen, the probation officer must set forth reasons why he considers such person to be reliable.

The probation officer must, on application for a search warrant, have a reasonable basis to conclude that the probationer has violated his condition or conditions of probation, and that a search of the named place will lead to the proof needed to show that a violation had in fact occurred.   This

-22-

information must be presented in affidavit to a judge qualified to issue search warrants, and if he is satisfied that there are reasonable grounds to issue a search warrant, he may, in his discretion, issue a search warrant to the probation officer. In such event the probation officer may enlist the aid of law enforcement officers to assist him in the search.

In addition to the information constituting the probable cause, the probation officer shall provide information within the affidavit as to probationer's living arrangements, that is, whether the probationer is living alone, with family, with other relatives, or with friends. Upon consideration of these factors, the judge shall impose reasonable limitations as to the time, place and manner of search. Since privacy rights of third persons may be affected by the issuance and execution of a search warrant, the issuing judge shall impose such conditions of the search which are designed to protect as much as is reasonably possible, the rights of these third persons. For instance, in most instances, late night searches would not be permitted. But this, too, can vary from case to case.

The State has suggested that a search clause be imposed in such a manner that a probationer cannot be harassed or intimidated. This, of course, goes without saying. We believe, however, that by imposing a search warrant requirement and limiting the right to obtain a search warrant to a probation officer, there will be little if any harassment or intimidation. Only the probation officer is in a position to make the decision, in the context of the particular case, of what is best for the probation process, considering both the probationer and the legitimate interests of the public. He should, therefore, be the person who makes the decision as

to whether or not to seek a search warrant.  Indeed, a decision to do so may well rupture the working relationship he has with a probationer, and law enforcement officers should not be making that decision for the probation officer.

We have primarily focused on a search of a probationer's home in setting forther the essential guidelines.  Obviously, if the privacy of third persons is to be invaded, the search of a probationer's home is most likely to be the scene of those invasions.  On the other hand, the privacy of third persons is not as intimately involved where a probationer's vehicle is searched or where the probationer is personally searched.  The probation officer obviously has no right to search third persons in any event.  Because we have limited the right to search to a probation officer or a police officer at his direction, we do not feel that there will be significant abuses in searching either the probationer's vehicle or the probationer personally.  For this reason we do not impose a search warrant requirement on the probation officer to search either the probationer's vehicle or the probationer personally.  The probation officer must, however, have some articulable reason for conducting either search.  It is not sufficient that he make a decision to search based only on his unfettered discretion.

We note, however, that a probation officer obviously has the right to protect himself, and therefore we do not require that he have any articulable grounds to conduct a pat-down search to assure his own safety.

We emphasize that imposition of these search clause and polygraph clause limitations does not interfere with the traditional rights of law enforcement officers to use the tools at their disposal if they have the requisite probable cause to believe that probationer has committed a criminal offense.  We hold only that law enforcement officers have no business directly injecting themselves into the probationary

-24-

process, nor should the trial courts directly inject these law enforcement officials into the probationary process by permitting them to make decisions that are best left to the probation officers.

There is an additional question as to whether state prosecutors, as a condition to agreeing to a deferred sentence or suspended sentence, should be permitted to condition such agreement upon the willingness of the defendant to agree to a search clause condition or polygraph condition. Good policy, requires, we believe, that they not be permitted to do so. Rather, that question in each case should be left to the sentencing court. If a prosecutor could demand either or both of these conditions as part of a plea bargain the defendant is placed in an untenable position. Either he agrees to the conditions or he will not receive a deferred or suspended sentence. This kind of plea bargaining leverage should not belong to a prosecutor.

This is not to say that a prosecutor cannot inform a defendant that at the sentencing hearing he will request either a search clause or polygraph clause. He may have some good reasons to present to the sentencing court to ask for either or both conditions in a particular case, and he has a right of course, to present his case. But so does the defendant or his counsel have the right to present his case in opposition to the imposition of such conditions. In the event the prosecutor does ask for either or both conditions he must state with particularity his reasons for such request.

If, upon a consideration of the special circumstances of the case, the sentencing court determines that either or both conditions should be imposed, he shall state for the record, with particularity, the reasons for his decision.

Another question underlying the use of a polygraph clause is the use to which the test results are put. Test

results adverse to the probationer should not be sufficient in and of themselves to cause the revocation of probation. We do not believe these tests to be sufficiently trustworthy that one could be jailed or imprisoned solely as the result of a polygraph examination. This is not to say that we believe polygraph examinations have no merit. We hold that in addition to the adverse results of a polygraph examination, there must be independent corroboration that a violation of a condition of probation has occurred. It is conceivable that a probationer may be subjected to repeated polygraph examinations with relation to different events and different periods of time, and that he has repeatedly failed the tests administered. We express no opinion here as to whether this would be sufficient reason to revoke a probationer's probation.

For the foregoing reasons, the order of revocation and imprisonment is vacated and the defendant is ordered placed back on probationary status. Should the court desire to impose either or both of the conditions again, it shall do so in a manner consistent with this opinion.

_____
                        Justice

We Concur:


_____
          Chief Justice


_____


_____
                 Justices

-26-

Mr. Chief Justice Frank I. Haswell and Mr. Justice John Conway Harrison dissenting.

We dissent. We do not agree that the condition of defendant's sentence requiring him to submit to a search without a warrant is unconstitutional as applied to the facts of this case. Neither do we agree that the provision requiring defendant to submit to a polygraph examination is unconstitutionally overbroad under the circumstances here.

We would affirm the order of the District Court revoking defendant's suspended sentence and ordering him to prison.

_____
Chief Justice

_____
Justice