**Gary L. QUIGG, Plaintiff,**

v.

**Tim FRANCE, Gerald Crego, and Dan Williams, Missoula County Deputy Sheriffs; and Michael C. McCarty, Montana District Probation and Parole Officer, Defendants.**

**No. MCV 80–12–M.**

United States District Court,
D. Montana,
Missoula Division.

Dec. 4, 1980.

Gary L. Quigg, pro se.

RUSSELL E. SMITH, District Judge.

In this civil rights action, Gary Quigg, an inmate of the Montana State Prison, seeks damages.

The facts, as stated by Quigg, are:

He was released from the Montana State Prison in March 1978 on an educational furlough to attend the University of Montana. He lived in a University dormitory. On October 11, 1979, a deputy sheriff received an anonymous tip to the effect that Quigg had dangerous drugs in his dormitory room. The deputy called Quigg's parole officer who determined that Quigg, when furloughed, had not signed a consent to be searched. No search warrant was procured, but nevertheless the dormitory room was searched by the parole officer and three sheriff's deputies, and what appeared to be

drugs was seized. A hearing before the parole board followed, and Quigg's furlough was revoked because of his possession of the drugs. Quigg then filed a petition with the state district court asking that the drugs which had been seized be suppressed because the search was unlawful. That court suppressed the evidence. The parole board then, being unable to use the drugs as evidence and having no other basis on which to deny the furlough, reinstated it.

Quigg, who is still serving his sentence, seeks to bring this action in which over a million dollars in damages is sought from the sheriff's deputies and the parole officer who searched his room. Quigg does not deny that he did possess the drugs, but he does charge that defendants acted illegally in seizing them. He petitions to proceed in forma pauperis, and for the reasons stated hereafter the petition is denied.

Under the United States Constitution, a parolee [1] may be searched by a parole officer assisted by sheriff's deputies if the search is for parole purposes as distinguished from searches by law enforcement officers in the enforcement of the criminal law.[2]

In *Latta v. Fitzharris*, 521 F.2d 246 (9th Cir.) (en banc), *cert. denied*, 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975), the Court of Appeals for the Ninth Circuit distinguished between a private citizen and a convict who is paroled prior to the expiration of his term, stating that a parolee does not have the expectations of privacy enjoyed by other citizens, and then said at 250:

**1.** I equate the status of a person living out of prison walls on an educational furlough with that of a parolee, even though in my opinion the prisoner on educational furlough is under much closer supervision than is a parolee. Under the Montana Prisoner Furlough Program (MCA §§ 46–23–401–426 (1979)), designed to educate and rehabilitate the inmates of the prison, the limits of the confinement of the prisoner are extended, but the prisoner remains under the supervision of the Department of Institutions and a supervising agency selected by it. While on furlough the prisoner is considered to be serving his sentence and can be guilty of an escape.

**2.** This was a parole officer search. The complaint itself shows that the parole officer was called by the police who received the initial tip; that the parole officer checked the parole records; and that he then consulted with his superiors in the parole system and only then decided to search Quigg's room. In Quigg's room the parole officer announced the search. The parole officer was assisted in it by the deputy sheriffs. The complaint states: "The evidence seized during said search was used solely and expressly for the purpose of violating Petitioner's educational furlough and causing his return to the Montana State Prison ...."

We think that one of these restrictions, necessary to the effective operation of the parole system, is that the parolee and his home are subject to search by the parole officer when the officer reasonably believes that such search is necessary in the performance of his duties.

*See also United States v. Dally,* 606 F.2d 861 (9th Cir. 1979); *United States v. Jeffers,* 573 F.2d 1074 (9th Cir. 1978); *United States v. Gordon,* 540 F.2d 452 (9th Cir. 1976); *United States v. Consuelo–Gonzalez,* 521 F.2d 259 (9th Cir. 1975). We note that the Court of Appeals for the Fourth Circuit refused to follow *Latta. United States v. Bradley,* 571 F.2d 787 (4th Cir. 1978). This court, however, is controlled by the Ninth rather than the Fourth Circuit.

 In my opinion, the search here, while not based upon facts sufficient to constitute probable cause in an ordinary case, was based upon specific facts known to the parole officer who, knowing them, could reasonably believe a search necessary. No more was needed under the standard to be found in the opinions of any of the judges comprising the majority in *Latta.*

I judicially note the state law, as announced by the Montana Supreme Court in *State v. Fogarty,* Mont., 610 P.2d 140 (1980): that a warrantless search of a probationer's home by a sheriff acting under a consent to search given by the probationer as a condition of his probation is illegal. While the search was conducted by the sheriff, much of the language in the majority opinion is directed to probation officers. Whatever its effect may be, *Fogarty* does not control this case in this court.[3] Perhaps the people of Montana, in their constitution and laws as interpreted by their high court, have extended to criminals more rights than are found in the United States Constitution, and, if so, then Quigg may have a civil remedy in the state courts. Here, however, the defendants in this civil action are charged with violations of the United States Constitution. The United States District Court for the District of Montana is governed by the Constitution as it is interpreted by the Court of Appeals for the Ninth Circuit. Under that interpretation, the search was not constitutionally infirm.

The plaintiff has made a sufficient showing of indigency to warrant a filing in forma pauperis, but the petition to file is denied as frivolous.

---

**3.** It may be that the state district court, in suppressing the evidence, relied on *State v. Fogarty,* Mont., 610 P.2d 140 (1980), even though that case dealt with a probationer whose sentence had been suspended and who was not, as was Quigg, serving an imposed sentence outside the prison walls. The state district court order, if expressive of Montana law, is not binding on these defendants since they were not parties to the suppression proceedings.