**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Louis B. SCOTT, Defendant-Appellant.**

**No. 81–1434.**

United States Court of Appeals,
Fifth Circuit.

June 7, 1982.
Rehearing and Rehearing En Banc
Denied July 26, 1982.

---

W. A. Bratton, III, Dallas, Tex., for defendant-appellant.

Michael P. Heiskell, Asst. U. S. Atty., Dallas, Tex., for plaintiff-appellee.

Before GEE and JOHNSON, Circuit Judges, and VAN PELT *, District Judge.

GEE, Circuit Judge:

When two postal inspectors' investigation of an altered money order sent by mail implicated appellant Scott, a parolee, they discussed the matter with Scott's parole officer and requested that she obtain exemplars written by his hand and his typewriter. She did so on a regular visit, borrowing the machine on the pretext of typing a business document and later having Scott write out manually certain information about his roommate. Analysis of the exemplars yielded probable cause, a search warrant issued, the typewriter was seized, and Scott's conviction followed. He appeals, contending that his fourth amendment rights were violated by the parole officer's procuring the exemplars by deception and that all developments that followed on their procurement were fruits of her invalid action. We affirm.

* District Judge of the District of Nebraska, sitting by designation.

Scott's underlying contention is that, though a parolee, he retains substantial rights under the fourth amendment, rights that were violated by the ruse practiced upon him. As his counsel put it in oral argument, Scott's status as a parolee does not license every law enforcement authority that takes an interest in his activities to investigate them by using his parole officer as a cat's paw. Response to these arguments requires a consideration both of the nature of Scott's affected rights and of the character, as reasonable or otherwise, of his parole officer's actions.

*Parolees' Rights Against Searches and Seizures.*

The purposes and development of the parole systems are reviewed and discussed at some length in *Morrissey v. Brewer*, 408 U.S. 471, 492–96, 92 S.Ct. 2593, 2605–08, 33 L.Ed.2d 484 (1972). For purposes relevant here, it suffices to observe that the parole arrangement has grown up, chiefly during this century, to forward various purposes. Among these are restoring convictees to productive society as soon as their behavior warrants by placing them in mitigated confinement under reduced controls; reducing the costs to society of institutional confinement; and providing the incentive to good behavior offered by a prospect of early release from full confinement. Parolees, as prisoners serving out their terms of punishment under conditions of partial release, enjoy constitutional rights commensurate with that status. As was held in *Morrissey*, for example, their paroles may not be revoked without conforming to minimum due process. Here we focus on the degree of protection accorded them by the fourth amendment against searches and seizures.

Our court has not had occasion to address this question directly, though we have noted in passing that "a parolee is entitled to protection from illegal search and seizure . . . ." *Brown v. Kearney*, 355 F.2d 199 (5th Cir. 1966).[1] Other circuits have pro-

1. In the related—perhaps constitutionally identical—field of restrictions on liberty imposed in

duced a variety of responses, ranging from older authorities excluding parolees entirely from constitutional protection against searches and seizures [2] to the apparent present position of the Fourth Circuit that parolees enjoy entirely the same rights as other citizens, so that even a parole officer must secure a warrant before searching a parolee's residence. *United States v. Bradley*, 571 F.2d 787 (4th Cir. 1978). An intermediate view is that of the Ninth Circuit, which appears to follow a general rule of reasonableness, permitting searches upon the basis of a good-faith belief by the probation officer that they are necessary to the performance of his supervisory duties—even one grounded in no more than a "hunch" arising from his knowledge and observation of the parolee. *Latta v. Fitzharris*, 521 F.2d 246 (9th Cir. 1975). Another is that of the Second Circuit, expressed in *United States ex rel. Santos v. New York State Board of Parole*, 441 F.2d 1216 (2d Cir. 1971).

The *Santos* case is factually on all fours with ours, and its reasoning is sound and persuasive. There a detective, having received information providing reasonable grounds to believe a parolee was dealing in stolen goods, informed the parole officer of it. Together they went to his apartment, where the parole officer searched it without a search warrant,[3] discovering items of stolen property. On collateral attack on the resulting conviction, the court upheld it against fourth amendment objections. Observing that the amendment forbids only *unreasonable* searches, the court declared that the parole authorities' duty to supervise parolees such as Santos and to obtain all facts and circumstances surrounding any parole violation required that parole officers be vested with search powers over pa-

rolees that would be impermissible if directed against ordinary citizens. In addition, it rejected just such an attack as is made here, that the parole officer was acting as a mere agent of the police. We generally agree.

The parolee occupies a position intermediate between that of an ordinary citizen, entitled to be free of intrusion not based on probable cause at least, and that of an incarcerated convictee, liable to searches at any time for well-nigh any reason. Subject to the conditions of his parole, conditions chiefly supervised and administered by his parole officer, he functions in relation to his fellow citizens much like one under no special restrictions. That he should do so is, of course, desirable, since it forwards a central purpose of the parole scheme: controlled reintegration of the parolee into society. In this connection, it seems reasonable that his relations with the police in general, and their powers over him, need be no different than those of the ordinary citizen. *See Latta v. Fitzharris, supra*; and cases cited at 248. It is entirely otherwise, however, as to his relationship with the parole officer.

■ As the official primarily charged both with guiding the parolee during his reorientation and assuring that society at large is not subjected to undue risks of misbehavior by him, the parole officer stands substantially *in loco parentis* or in the position of a guardian to a ward, one with a history of fractiousness or worse. Among his charges will be those who on former occasions have committed killings, rapes, armed robberies, and the like and who have spent lengthy periods of confinement under conditions bearing small resemblance to a church social. Many, perhaps all, are at least potentially dangerous.[4] We see nothing constitutionally unreasonable in

connection with probation, we have held that a condition of probation is not invalid merely because it affects the probationer's ability to exercise constitutional rights. *United States v. Tonry*, 605 F.2d 144 (5th Cir. 1979) (Federal Campaign Act violator forbidden from all political activity during probation).

2. *See Latta v. Fitzharris*, 521 F.2d 246, 248–49 (9th Cir. 1975) (discussed).

3. The parole officer had obtained a parole violator warrant and gone, accompanied by the detective, to the apartment, intending to serve the warrant. Santos was absent; the landlady admitted them.

4. Dangerous, that is, significantly above the normal run of mankind, itself notoriously a somewhat dubious risk.

a rule that, in exchange for all but normalizing the parolees' relations with society at large, subjects him to a diminished expectation of privacy in his relationship with a person standing to him as does his parole officer. And while we are not legislators, we recognize the need for formulation of a test usable in this connection by persons untrained in the law—as parole officers may often be—on a day-to-day basis. This we think may be found in the emerging and now rather stabilized concept of "reasonable suspicion," employed in a variety of other contexts in and about the criminal law. Less stringent a standard than probable cause, reasonable suspicion requires no more than that the authority acting be able to point to specific and articulable facts that, taken together with rational inferences from those facts, reasonably warrant a belief in the conclusion mooted—in this instance, that a condition of parole has been or is being violated. *See*, for developing articulations of the concept, *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), then *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), then *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). Where the parole officer discovers or is apprised of such facts, we think that he will seldom be found at fault in acting upon them as did the officer here or that in *Santos.*

What we have said disposes of the suggestion that the action of Scott's parole officer was somehow invalid because the facts upon which she acted came to her via a postal inspector, rather than as a result of her own investigations. And although appellant makes no contention that the facts furnished were not such as to arouse a reasonable suspicion in the parole officer's mind, we note that those known to the postal inspectors and available to her at the time of her search are such as to do so: that a money order issued by a local bank had been altered from $1 to $770 and sent by mail to purchase merchandise from a New Jersey mail-order house, that the order was purchased by a male, and that the male gave as his telephone number that of the apartment where Scott resided with his girlfriend.

Scott's chief complaint is that the exemplars that furnished probable cause for the search warrant eventually issued were gotten by means of a consent obtained by deception. Had his consent been necessary, this complaint might carry force. Since we have held his consent unnecessary, however, it has none.[5]

AFFIRMED.

---

5. Appellant's contention as to the sufficiency of the affidavit to support the search warrant is meritless and does not warrant discussion.