STATE of Wisconsin, Plaintiff-Respondent,

v.

Joseph G. GRIFFIN, Defendant-Appellant-
Petitioner.

Supreme Court

*No. 84–021–CR. Argued June 4, 1986.—Decided June 20,
1986.*

(Also reported in 388 N.W.2d 535.)

For the defendant-appellant-petitioner there were briefs by *Alan G. Habermehl* and *Kalal & Habermehl,* Madison, and oral argument by *Alan G. Habermehl.*

For the plaintiff-respondent the cause was argued by *Barry M. Levenson,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

44

DAY, J.   This is a review of a published decision of the court of appeals, *State v. Griffin,* 126 Wis. 2d 183, 376 N.W.2d 62 (Ct. App. 1985), affirming the judgment of the circuit court for Rock county, Honorable J. Richard Long, circuit judge, convicting Joseph G. Griffin, (Defendant) of possession of a firearm by a convicted felon contrary to sec. 941.29(2), Stats.[1] Defendant was previously convicted of possession of heroin with intent to deliver which is a felony. A probation agent discovered a gun at the Defendant's residence during a warrantless search. At the time of the search, Defendant was on probation for resisting arrest, disorderly conduct and obstructing an officer. The trial court denied Defendant's motion to suppress the weapon as evidence, and the court of appeals affirmed. The issues on review are: 1) Does the nature of probation justify an exception to the warrant requirement for searches of a probationer's home by a probation officer?; if so, 2) May a probation officer conduct a warrantless search of a probationer's home based on "reasonable grounds," rather than probable cause, to believe the probationer may possess contraband?; if so, 3) Do the facts of this case constitute reasonable grounds to believe that the Defendant possessed contraband?

We hold that by its nature, probation places limitations on the liberty and privacy rights of probationers, and these limitations justify an exception to the

---

[1] Section 941.29(1) and (2), Stats., provides in part:

"**941.29 Possession of a firearm.** (1) A person is subject to the requirements and penalties of this section if he or she has been:
" (a)   Convicted of a felony in this state. . . .
" (2)   Any person specified in sub. (1) who, subsequent to the conviction for the felony or other crime, as specified in sub. (1), . . . possesses a firearm is guilty of a Class E felony."

warrant requirement. Furthermore, we hold that a probation officer may conduct a warrantless search of a probationer's residence if he has "reasonable grounds" to believe that a probationer has contraband. Because we hold that the search by the probation officers was based on reasonable grounds, we affirm the court of appeals.

On September 4, 1980, Defendant was convicted of resisting arrest, disorderly conduct and obstructing an officer. Defendant was placed on probation for these offenses and was still on probation as of April 5, 1983.

Mr. Michael T. Lew, a supervisor for the State Bureau of Probation and Parole in Beloit, testified at the suppression hearing that on April 5, 1983, he received a phone call from the Beloit Detective Bureau that the Defendant "may have had guns in his apartment." While Mr. Lew believed the source of the information was Truett Pittner, a detective captain, Captain Pittner testified at the suppression hearing that he did not believe he called Mr. Lew, but rather, believed it was one of his detectives. After waiting two or three hours for the Defendant's probation officer, Mr. Lew made arrangements for another probation agent, Ms. Joanne D. Johnson, to participate in the search, and for three Beloit police officers, Officer Sam W. Lathrop, Officer Gerald A. Leppla and Detective Victor Hanson, to provide protection for him and Ms. Johnson.

Mr. Lew, Ms. Johnson and the three plainclothes police officers went to the Defendant's apartment. When Defendant answered the door, Mr. Lew told Defendant who they were and informed him that they were going to search his residence. Upon entering the apartment, Mr. Lew went into the kitchen to search, Ms. Johnson went into a bedroom to search, and the

police officers, who did not search, went into the living room with the Defendant and a woman who lived with Defendant. Upon entering the apartment, Ms. Johnson saw what she perceived to be marijuana on a living room table, but did not take possession of it at that time.

When Mr. Lew entered the living room, followed by Ms. Johnson, one of the officers pointed toward the area where a table, with a broken drawer which made it possible to see inside the drawer, was located. The table was located in the general direction that Mr. Lew was headed. In the drawer, Mr. Lew found a handgun and turned it over to one of the police officers. He then directed the officers to take Defendant "into custody on a probation violation apprehension." Defendant alleged that one of the officers told Mr. Lew that there was a gun in the drawer. Ms. Johnson, upon entering the living room, took possession of the alleged marijuana.

On April 11, 1983, a criminal complaint was filed charging the Defendant with possession of a firearm by a felon, contrary to sec. 941.29(2), Stats., and possession of a controlled substance, THC, contrary to secs. 161.14(4)(t) and 161.41(3). Both charges were alleged to fall under sec. 939.62, allowing for an enhanced penalty for habitual criminality.

Defendant filed the following motions: motion to sever, motion to dismiss habitual criminality allegations, motions to dismiss both charges, motion to suppress all evidence obtained during the search of his residence and a motion to dismiss for illegal arrest, seeking dismissal on the ground that the arrest was based on evidence obtained in an illegal search. The motions to sever and dismiss the habitual criminality

allegations were granted, and all the other motions were denied. The trial court ordered that the trial on the possession of a firearm by a felon precede the trial for the possession of THC.

In denying the Defendant's motions to dismiss because of an illegal arrest and to suppress evidence, the trial court held that Defendant's fourth amendment rights were not violated when the probation officers searched his residence without a warrant. It ruled that a probation officer must act reasonably in making a search of a probationer's residence. Based on the evidence before it, the trial court determined that the search was reasonable. Furthermore, the trial court found as a matter of fact, that the search was not a police search and that the police officers were present to protect the probation officers.

In addition to the handgun, other evidence, obtained from the search, was admitted into evidence at the jury trial on August 18, 1983.

The jury found the Defendant guilty of possession of a firearm by a convicted felon. The charge of possession of THC was dismissed and "read in" at the sentencing. The judgment of conviction and sentence to Wisconsin State Prisons, dated September 16, 1983, sentenced Defendant to a prison term of two years. An amended judgment, dated October 24, 1983, gave Defendant one hundred and one days credit toward the two year sentence. Defendant appealed the judgment and amended judgment to the court of appeals.

In affirming, the court of appeals relied on the logic of *State v. Tarrell*, 74 Wis. 2d 647, 247 N.W.2d 696 (1976), to conclude that a probation officer may conduct a warrantless search of a probationer's dwelling even if the search does not meet one of the usual exceptions

to the warrant requirement if the search is reasonable. The court of appeals upheld the "reasonable grounds to believe" standard in the Wisconsin Administrative Code sec. HSS 328.21(4) (currently sec. HSS 328.21(3)(a)) as an adequate protection of a probationer's constitutional rights, and concluded that the tip from the police constituted reasonable grounds to believe that the probationer's living quarters contained contraband. Defendant petitioned this court for review and review was granted.

■

The constitutional legality of a warrantless search of a probationer's residence by a probation officer raises a question of law. This court reviews questions of law "independently without deference to the decisions of the trial court and court of appeals." *Ball v. District No. 4 Area Board,* 117 Wis. 2d 529, 537, 345 N.W.2d 389 (1984).

■

Defendant's motion to suppress the handgun was based on the fourth and fourteenth amendments to the United States Constitution[2] and art. I, secs. 1 and 11

---

[2] The fourth amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The fourteenth amendment to the United States Constitution provides in part:

"Section 1. All persons born or naturalized in the United States,

of the Wisconsin Constitution.[3] The provisions of the fourth amendment and art. I, sec. 11 which prohibit unreasonable searches and seizures are almost identical. In *State v. Boggess,* 115 Wis. 2d 443, 448–449, 340 N.W.2d 516 (1983), this court stated that the basic purpose of these provisions is:

"[T]o safeguard the privacy and security of individuals against arbitrary invasions by government officials. *See Michigan v. Tyler,* 436 U.S. 499, 504 (1978). The United States Supreme Court has consistently held that warrantless searches are per se unreasonable under the fourth amendment, subject to a few carefully delineated exceptions. *Cady v. Dombrowski,* 413 U.S. 433, 439 (1973). These exceptions have been 'jealously and carefully drawn', *Jones v. United States,* 357 U.S. 493, 499 (1958), and the bur-

and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[3] Article I, sec. 1 of the Wisconsin Constitution provides:

"**Equality; Inherent rights.** SECTION 1. . . . All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to serve these rights, governments are instituted, deriving their just powers from the consent of the governed."

Article I, sec. 11 provides:

"**Searches and seizures.** SECTION 11. The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

den rests with those seeking exemption from the warrant requirement to prove that the exigencies made that course imperative. *Coolidge v. New Hampshire,* 403 U.S. 443, 455 (1971)."

A person's home or residence is entitled to special dignity and sanctity. *Laasch v. State,* 84 Wis. 2d 587, 594, 267 N.W.2d 278 (1978). The exceptions to the search warrant requirement recognized by the United States Supreme Court include consent, search incident to a lawful arrest, hot pursuit, exigent circumstances and plain view. *Texas v. Brown,* 460 U.S. 730, 735–736 (1983); *Washington v. Chrisman,* 455 U.S. 1, 5–7, 9–10 (1982) (plain view and consent). The state does not rely on any of these recognized exceptions to justify the warrantless search of a probationer's residence by a probation officer, but rather, it relies on the Defendant's probationary status. If there is to be such an exception, its foundation is to be found in the nature of probation. *See, Tarrell,* 74 Wis. 2d at 653. Neither this court nor the United States Supreme Court has declared such an exception.

Defendant argues that the court should require the probation agent to obtain a search warrant, absent exigent circumstances. He argues that the *Tarrell* decision created a very limited exception to the warrant requirement based on the fact that the defendant was only subjected to a limited invasion of privacy for a short period of time. Furthermore, Defendant propounds three public policy reasons why this court should not create a probationer exception to the warrant requirement: 1) Probationers are citizens whose constitutional rights should not be limited absent a compelling reason; 2) Such an exception invites abuse by the police; and, 3) Rights of innocent third parties

51

must be considered. In response, the state argues that probationers have a diminished expectation of privacy which justifies the exception to the warrant requirement. It argues that the reasoning employed in *Tarrell* requires the conclusion that warrantless searches of a probationer's residence, by a probation officer, on less than probable cause, are constitutionally acceptable. Finally, the state argues that the policy arguments of the Defendant are unpersuasive.

> "Although there is some authority to the effect that the Fourth Amendment rights of probationers and parolees are of precisely the same scope and dimension as those of the public at large, the weight of authority is to the contrary. . . . And while there is some disagreement as to whether a probationer's Fourth Amendment rights are diminished to the same extent and degree as those of a parolee, there is considerable authority supporting the proposition that probationers may lawfully be subjected to searches which, absent their probation status, would be deemed unlawful because of the absence of probable cause or a search warrant or both." 3 W. LaFave, *Search and Seizure,* sec. 10.10, at 421–422 (1978). (Footnotes omitted.)

As the court of appeals pointed out, there is ample authority for the viewpoint that probation or parole officers may conduct warrantless searches of a probationer's or parolee's residence. *See, e.g., United States v. Scott,* 678 F.2d 32, 34–35 (5th Cir. 1982); *Latta v. Fitzharris,* 521 F.2d 246, 250 (9th Cir. 1975) (en banc), *cert. denied,* 423 U.S. 897 (1975); *People v. Anderson,* 189 Colo. 34, 536 P.2d 302, 305 (1975); *State v. Fields,* 686 P.2d 1379, 1389–1390 (Hawaii 1984); *State v. Pinson,* 104 Idaho 227, 657 P.2d 1095, 1099–1100 (Ct. App. 1983)

(evidence obtained from a search of the defendant used in a probation revocation hearing); *People v. Huntley,* 43 N.Y.2d 175, 371 N.E.2d 794, 796, 401 N.Y.S.2d 31 (1977); *State v. Earnest,* 293 N.W.2d 365, 368–369 (Minn. 1980) (evidence obtained used in a probation revocation hearing; *State v. Velasquez,* 672 P.2d 1254, 1260 (Utah 1983); *State v. Simms,* 10 Wash. App. 75, 516 P.2d 1088, 1094 (1974). There is also some authority for the viewpoint that a probation or parole officer may not search a probationer's or parolee's residence without a warrant, unless one of the judicially recognized exceptions is present. *United States v. Rea,* 678 F.2d 382, 387–388 (2nd Cir. 1982) (concluding that such requirement would not significantly interfere with the dual goals of probation); *United States v. Bradley,* 571 F.2d 787, 789 (4th Cir. 1978); *State v. Cullison,* 173 N.W.2d 533, 537 (Iowa 1970), *cert. denied,* 398 U.S. 938 (1970) (holding that a parolee's fourth amendment rights receive the same recognition as any other person); *State v. Fogarty,* 187 Mont. 393, 610 P.2d 140, 152 (1980) (holding warrant needed to protect legal interests of innocent third persons).[4]

██ This court has recognized limits on the liberty and privacy interests of probationers based on the nature of probation. *Tarrell,* 74 Wis. 2d at 654. In *Tarrell,* the defendant was on probation for enticing a child for im-

---

[4] In determining whether the fourth amendment protection against unreasonable searches and seizures has been violated, several courts fail to distinguish between probation status or parole status or treat them as the same. *See, e.g., United States v. Consuelo-Gonzalez,* 521 F.2d 259, 266 (9th Cir. 1975); *Pinson,* 657 P.2d at 1098, n. 1; *Earnest,* 293 N.W.2d at 368, n. 2; *Seim v. State,* 95 Nev. 89, 590 P.2d 1152, 1154 (1979); *Velasquez,* 672 P.2d at 1258, n. 2.

moral purposes when his probation agent was informed that he was a suspect in a similar offense. Because of the similarity between the two offenses, Tarrell's probation agent ordered him to appear at the police station and be photographed. Defendant complied, but alleged that the required appearance was an unconstitutional seizure of his body and the photographs were also an unconstitutional seizure in violation of the fourth amendment. *Id.* at 652–655. In holding the warrantless seizures constitutional, this court reasoned:

> "If there is to be an exception to the requirements of the fourth amendment granting probation agents a limited right to search or seize a probationer without a warrant, the foundation for this exception lies in the nature of probation itself. Probation, like parole, 'is an integral part of the criminal justice system and has as its object the rehabilitation of those convicted of crime and the protection of the state and community interest.' *State ex rel. Niederer v. Cady,* 72 Wis. 2d 311, 322, 240 N.W.2d 626, 633 (1976). While probation is a privilege, not a matter of right, once it has been granted this conditional liberty can be forfeited only by breaching the conditions of probation. A sentencing judge may impose conditions which appear to be reasonable and appropriate. Sec. 973.09, Stats. A sentence of probation places the probationer 'in the custody of the department' subject to the conditions of probation and rules and regulations of the Department of Health and Social Services. Sec. 973.10. *All conditions, rules and regulations must be imposed with the dual goal of rehabilitation of the probationer and protection of the public interest. The imposition of these conditions, rules and regulations demonstrates that while a probationer has a conditional liberty, this*

*liberty is neither as broad nor as free from limitations as that of persons who have not committed a crime.* The expectations of privacy of a person on probation cannot be the same as the expectations of privacy of persons not on probation. It is only the reasonable expectations of privacy which the fourth amendment protects. *Conditions of probation must at times limit the constitutional freedoms of the probationer. Necessary infringements on these freedoms are permissible as long as they are not overly broad and are reasonably related to the person's rehabilitation. By the very nature of probation, limitations on the liberty and privacy of probationers are imposed. These limitations are the bases for an exception to the warrant requirement of the fourth amendment."* *Id.* at 653–654. (Footnotes omitted.) (Emphasis added.)

Furthermore, this court stated that the application of a "less stringent standard for the probation agent's search and seizure" coincides with the agent's dual role of assisting in rehabilitating the probationer and protecting the public. *Id.* at 655. "While there may not have been probable cause for the issuance of a warrant, there was probable cause for the agent's attempt to determine whether Tarrell had complied with the probation conditions." *Id.*

In *Tarrell,* this court determined that the seizures were reasonable, and therefore, constitutional. *Id.* at 656–657. A probation agent has a duty to determine whether the probationer is complying with the terms of his probation, and in *Tarrell,* this court determined that ordering the defendant to have his photograph taken, and the taking of the photograph furthered the agent's efforts to comply with this duty. *Id.* at 655–656.

*Tarrell* does not hold that a probation agent may conduct a warrantless search of a probationer's residence, in the absence of circumstances that would permit such a search. Nevertheless, the logic employed by the court in *Tarrell,* is equally applicable to this situation. This is similar to the analysis used by other courts to justify such searches.

In *Earnest,* the Minnesota court looked at the relationship between the probation officer and his probationer and the dual nature of probation. The court recognized that because of this special relationship the "law relating to probation searches cannot be strictly governed by automatic reference to ordinary search and seizure law." *Earnest,* 293 N.W.2d at 368. The *Earnest* court cited this court's decision in *Tarrell* for this proposition. In *Scott,* the fifth circuit focused on the dual role of parole to justify warrantless searches. *Scott,* 678 F.2d at 34–35. In *United States v. Consuelo-Gonzalez,* 521 F.2d 259, 265–266 (9th Cir. 1975), the ninth circuit recognized that while probationers are subject to constitutional limitations from which other citizens are free, such limitations must serve the ends of probation. In balancing the probationer's right to privacy with the probation system's interest in invading the probationer's privacy, the court concluded that a probation officer need not obtain a warrant prior to a search.

We are not persuaded by the Defendant's argument that this court should not create a probationer exception to the warrant requirement because it will result in abuse by the police. We are not granting a right to the police to undertake a warrantless search. This exception applies to searches conducted by proba-

tion agents. It is the nature of probation and the duties placed on probation agents that justify such searches. An otherwise reasonable search should not be deemed unlawful simply because the police are the source of the information that leads to the search.[5] The trial court found that the search was not a police search, and that the police were present for protection purposes. ■

Nor are we persuaded by the Defendant's argument that a warrant is necessary to protect the rights of innocent third persons who may be living with the probationer. Defendant cites only *Fogarty* for this proposition. *Fogarty,* 610 P.2d at 152. In dicta, the court in *Velasquez* said that caution would suggest that a warrant be obtained if the rights of nonparolees may be involved. *Velasquez,* 672 P.2d at 1260, n. 3. In accordance with the court of appeals' decision in this case, we find that a nonprobationer's rights may be affected whether or not a warrant is required. If a warrant were required, the impartial magistrate would determine whether there was probable cause to search the probationer's residence, and the rights of other persons would not be considered. We are not creating a right for probation officers to conduct arbitrary and unreasonable searches. Though a probationer has a diminished expectation of privacy, he still has privacy rights that must be respected. We conclude that the standard which a probation agent must comply with to conduct a warrantless search adequately protects the proba-

---

[5] The following cases upheld warrantless searches by parole or probation agents where the police provided the information justifying the search. *United States ex rel. Santos v. New York State Bd. of Parole,* 441 F.2d 1216, 1218 (2nd Cir. 1971); *People v. Adams,* 36 A.D.2d 784, 319 N.Y.S.2d 372 (1971).

tioner's rights, and there is no need to require a warrant simply to protect the rights of other persons. *See, People v. Mason,* 5 Cal. 3d 759, 488 P.2d 630, 634, 97 Cal. Rptr. 302 (1971), *cert. denied,* 405 U.S. 1016 (1972).

Therefore, based on the nature of probation, we conclude that a probation agent who reasonably believes that a probationer is violating the terms of probation may conduct a warrantless search of a probationer's residence.[6] Furthermore, we conclude that the evidence obtained in the search may be used, as in this case and in *Tarrell,* at a trial seeking a new conviction against the probationer. If the search is otherwise reasonable, such a search is constitutional. Thus, there is no reason to suppress any evidence discovered during a warrantless search of the probationer's residence.

The ultimate standard set forth in the fourth amendment and art. I, sec. 11 is one of reasonableness. People have a right to be free from unreasonable searches and seizures. "[T]his court has maintained that the reasonableness of a search or seizure is to be determined by the facts and circumstances of each case." *Tarrell,* 74 Wis. 2d at 655. (Citations omitted.) In determining what constitutes a reasonable search, we turn for guidance to those decisions that have allowed warrantless searches of a probationer's or parolee's residence by a probation or parole agent. These cases hold

---

[6] Some courts have justified warrantless searches of a probationer's or parolee's residence based on the grounds of "constructive custody," "waiver" or "implied consent." *See,* 3 W. LaFave, *Search and Seizure,* sec. 10.10 (1978); 1 W. Ringel, *Searches and Seizures, Arrests and Confessions,* sec. 17.3 (1986). Based on the reasoning employed in *Tarrell,* we rely not on these theories, but rather on the nature of probation.

that a search may be constitutionally made based on a standard of reasonableness, which is less than probable cause. These cases have variously described this standard. *See, e.g., Scott,* 678 F.2d at 35 (reasonable suspicion supported by specific and articulable facts); *Latta,* 521 F.2d at 250 (plurality decision) (reasonable belief that such search is necessary based on specific facts, although a "hunch" by the parole officer may be sufficient); *Hollen v. Bureau of Corrections,* 565 F. Supp. 1022, 1023 (E.D. Wis. 1983) (reasonableness standard); *Anderson,* 536 P.2d at 305 (reasonable grounds); *Pinson,* 657 P.2d at 1101 (reasonable grounds); *Velasquez,* 672 P.2d at 1260 (reasonable grounds which is defined as a reasonable suspicion); *Simms,* 516 P.2d at 1095–1096 (well founded suspicion). In analyzing the reasonableness of the seizure in *Tarrell,* this court stated that the "application of a less stringent standard for the probation agent's search or seizure is appropriate because of the nature of probation." *Tarrell,* 74 Wis. 2d at 655.

Defendant argues that in *Boggess,* 115 Wis. 2d at 455, this court determined that the "totality of the circumstances" analysis used in *Illinois v. Gates,* 462 U.S. 213 (1983), is to be used in determining the reasonableness of a search. The Supreme Court in *Gates* used the totality of the circumstances test for the purpose of determining whether probable cause existed to issue a warrant. *Boggess,* 115 Wis. 2d at 453. We distinguish *Boggess* from this case on the facts.

In *Boggess,* the court was confronted with a social worker's and police officer's warrantless entry into the defendant's home to determine the safety and welfare of two children. *Id.* at 445. The defendant in *Boggess* was not on probation. Here we are confronted with a

probationer whose liberty and privacy interests are limited by the nature of probation. As stated in *Tarrell,* due to the nature of probation, a less stringent standard for a search and seizure is appropriate.

In accordance with the aforementioned cases, we hold that a warrantless search of a probationer's residence may be made by a probation officer based on "reasonable grounds" to believe that the probationer has contraband at his residence.

The Department of Health and Social Services has promulgated a rule which allows probation agents to search a probationer's residence "if there are reasonable grounds to believe that the quarters . . . contain contraband." Section HSS 328.21(3)(a), Wis. Adm. Code.[7] Contraband is defined as "[a]ny item whose possession is forbidden by law." Section HSS 328.16(1)(b), Wis. Adm. Code. Section 941.29(2) , Stats., makes it unlawful for a convicted felon to possess a firearm. An administrative agency is bound by its regulations. *Vitarelli v. Seaton,* 359 U.S. 535, 539–540 (1959).

We agree with the court of appeals' decision in this case, and we conclude that the reasonable grounds standard in the Administrative Code is less than the probable cause standard needed to obtain a warrant. The notes to section HSS 328.21 provide that "[a]lthough it is preferable to have searches and sei-

---

[7] Effective May 1, 1986, sec. HSS 328.21, Wis. Adm. Code, was repealed and recreated. While the form and numbering of the rule was changed, only minor substantive changes were made to the rule in existence on the date of the search. This opinion will cite to the new rule and will make note of any substantive changes that have been made.

zure[s] conducted by law enforcement authorities, *that may not always be feasible or advisable.* It is therefore deemed important to give field staff the authority to conduct reasonable searches at reasonable times." (Emphasis added.) The note further provides that although discovery of contraband is important, uncontrolled searches should not be allowed. The note then cites *Tarrell* for the proposition that a less stringent standard for an agent's search is appropriate.

We hold that the "reasonable grounds" standard of Sec. HSS 328.21(3)(a), Wis. Adm. Code, meets the constitutional standard of reasonableness. Section HSS 328.21(6), Wis. Adm. Code, provides the following guidelines for implementing the test:

"(6) CONTRABAND. In deciding whether there are reasonable grounds to believe that a client possesses contraband or that a client's living quarters or property contain contraband, a staff member shall consider:

"(a) The observations of staff members;

"(b) Information provided by informants;

"(c) The reliability of the information relied on. In evaluating reliability, attention *shall* be given to whether the information is detailed and consistent and whether it is corroborated;

"(d) The reliability of the informant. In evaluating reliability, attention *shall* be given to whether the informant has supplied reliable information in the past and whether the informant has reason to supply inaccurate information;

"(e) The activity of the client that relates to whether the client might possess contraband;

"(f) Information provided by the client that is relevant to whether the client possesses contraband;

"(g) The experience of a staff member with that client or in a similar circumstance;

"(h) Prior seizures of contraband from the client; and

"(i) The need to verify compliance with rules of supervision and state and federal law." (Emphasis added.)[8]

Finally, we conclude that Mr. Lew had "reasonable grounds" to search the probationer's residence. At the motion hearing on August 15, 1983, the trial court found that the search in question was not a police search, and that the purpose of the police officers in going to the probationer's residence was for the protection of Mr. Lew and Ms. Johnson. The trial court also found, as a matter of fact, that the tip "that there were . . . or maybe there were guns in the probationer's apartment," did not come from an ordinary patrolman, but rather, it came from a detective on the Beloit Police Department. Based on the evidence before it, the trial court determined that the probation officer acted reasonably in making the search.

The question of whether a search is reasonable is a question of constitutional fact, and we review constitutional questions independent of the conclusions made by the lower courts. *State v. Woods,* 117 Wis. 2d 701, 715, 345 N.W.2d 457 (1984). However, the trial court's findings of evidentiary or historical facts, relevant to the issue of whether the search was reasonable, will not be upset on appeal unless they are contrary to the great weight and clear preponderance of the evidence. *See, Id.,* at 714–715.

---

[8] Under the old rule, sec. HSS 328.21(7), Wis. Adm. Code, the "shalls" were "shoulds."

The record shows that Mr. Lew received a telephone call from the Beloit Detective Bureau that the Defendant "may have had" or "had" guns at his residence. Although Detective Pittner, who Mr. Lew believed had provided the tip, did not recall contacting Mr. Lew, he did state that he believed that one of his detectives contacted the Probation and Parole Department with the information. The record does not contradict the trial court's finding that Mr. Lew received a tip from a detective.

The record before the trial court also supports its finding that this was not a police search. The record shows that Mr. Lew testified that he requested police assistance for protection purposes and that the police did not search. The record shows that upon entering Defendant's residence, Mr. Lew went to search the kitchen, Ms. Johnson went to search a bedroom, and the officers went into the living room with the Defendant and his woman friend. Upon entering the living room, Mr. Lew found the gun in a drawer that was apparently broken, and because it was broken, Mr. Lew could see the weapon in the drawer before he opened it. While there is testimony by Mr. Lew that an officer pointed in the direction of the table when Mr. Lew entered the living room, and testimony by Defendant that an officer informed Mr. Lew that there was a gun in the drawer, this evidence does not turn this into a police search. Mr. Lew testified that he was already headed in that direction. Mr. Lew and Ms. Johnson conducted the search and the police were there for protection purposes.

To determine whether Mr. Lew had "reasonable grounds" to conduct this warrantless search of Defendant's residence, we turn to the considerations set forth

in sec. HSS 328.21(6), Wis. Adm. Code. Mr. Lew was provided information by an informant, an anonymous detective from the Beloit Detective Bureau. *See,* sec. HSS 328.21(6)(b), Wis. Adm. Code. The information was detailed, in that it informed Mr. Lew that the Defendant may have guns at his residence, and it came from a source that did not have reason to supply inaccurate information. *See,* sec. HSS 328.21(6)(c) and (d), Wis. Adm. Code. Based on this information, it was reasonable for Mr. Lew to verify Defendant's compliance with state law, *see,* sec. HSS 328.21(6)(i), by conducting a search. Since Defendant was a convicted felon, it was unlawful for him to possess a firearm.

Here, Mr. Lew had information that the Defendant may have a weapon, which could have been used to injure or kill another. "That weapons be kept out of the hands of clients is critical for the safety of others. Contraband must also be kept out of the hands of clients so they may be better able to effectively participate in jobs, schooling or training, and other programs." Note to sec. HSS 328.21. A probation agent has a duty to see that a probationer is complying with the terms of his probation. The search conducted here was constitutional.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. *(dissenting).* I agree with the majority that the fourth amendment governs probation searches. I agree with the majority that probationers have an expectation of privacy but that their expectation is not the same as that of other citizens who are not on probation. I agree with the majority that the probation officer must have latitude in

observing the probationer and the probationer's home if the probation officer is to exercise his or her supervisory responsibilities.

This case does not, however, involve a probation officer making a home visit, which is generally regarded as an important part of the supervision. This case involves a probation officer making a search of the probationer's home. This kind of supervision is not usual. As the Department of Health and Social Services has stated, "it is preferable to have searches and seizure conducted by law enforcement authorities, [but] that may not always be feasible or advisable." Appendix, sec. HSS 328.21, Wis. Adm. Code (Reg., April 1986, No. 364, p. 243.)

I agree with the majority that a full search of the probationer's home is permissible without the usual quantum of probable cause. I depart from the majority because I would require that the evidence be suppressed in a criminal case unless the search was conducted by the probation officer with a warrant unless the case falls within one of the traditional exceptions to the warrant rule, *e.g.*, exigent circumstances. The rule under the constitution is that there should be a warrant. That requirement should not be easily cast aside.

I would allow the probation officer to search a probationer's home if the officer has reasonable cause to believe that the probationer is violating or is in imminent danger of violating a condition of probation and that the officer has reasonable cause to believe that evidence of the violation will be found in the home to be searched. Evidentiary support for the reasonable cause standard need not meet the standards of *Gates,* or *Aguilar-Spinelli. Illinois v. Gates,* 462 U.S. 213 (1983);

*Aguilar v. Texas,* 378 U.S. 108 (1969); *Spinelli v. United States,* 393 U.S. 410 (1969). As Judge Hufstedtler explained, the standard should be "sufficiently flexible to accommodate the [probation] officer's supervisory obligations, but not so loose as to offer the [probationer] and his family no protection from arbitrary intrusions by the [probation] officer or from searches that are unjustifiably broad." *Latta v. Fitzharris,* 521 F.2d 246, 257 (9th Cir. 1975) (Hufstedtler, J. dissenting).

In deciding whether to issue the warrant and in defining its terms, the judge would take into account the strength of the showing of reasonable cause and such additional factors as the nature of the probation violation suspected, the extent to which persons other than the probationer would have their privacy invaded by the search, and the existence of means less intrusive than the search to meet the probations officer's supervisory responsibilities. The issuance of a warrant on this kind of showing is not an undue burden on the probation officer and provides the protection for the probationer guaranteed by the constitutions. Requiring an officer to articulate reasons for the search is a deterrent to impulsive or arbitrary governmental conduct—and that is what the fourth amendment is about. Upholding the warrant requirements for searches of the probationer's home does not impede the dual goals of probation, protecting the public and rehabilitation. *Latta, supra* 521 F.2d at 257.

Professor LaFave characterizes Judge Hufstedtler's dissent in the *Latta* case as "cogently reasoned." *Search and Seizure,* sec. 10.10, p. 441 (1978). I am persuaded by her dissent and the similar reasoning in *United States v. Rea,* 678 F.2d 382 (2d Cir. 1982).

Because there was a search of this probationer's home without a warrant and there is no claim that the case falls within one of the exceptions to the warrant requirement, I would suppress the evidence.

Even if I were to agree with the majority that no warrant was needed, I would have to dissent because the facts in this case do not satisfy the tests set forth by the majority and the Department of Health and Social Services.

WILLIAM A. BABLITCH, J. *(dissenting)*. The facts in this case do not meet the majority's own test for reasonable grounds justifying the probation officers to search Griffin's residence for contraband nor do the facts satisfy the Department of Health and Social Services' (DHSS) standards for reasonable grounds to believe that a probationer possesses contraband. Section 328.21(3)(a), Wis. Adm. Code.

The only basis for the fullblown, warrantless search of Griffin's home by probation officers was the supervisor's testimony that a police detective told him that Griffin "may have had guns in his apartment." Nothing more. We do not know which detective telephoned the probation department with this information. We do not know the source of the detective's information. We do not know any fact which indicates that the probation supervisor had reason to believe that Griffin ever had anything to do with guns.

The facts in this case fail to satisfy any of nine standards in sec. 328.21(6), Wis. Adm. Code, which sets forth the DHSS's guidelines for implementing the test for reasonable grounds for a search which the majority adopts. At page 60. First, the record indicates that the probation staff did not rely on observations of its own

members in any respect, in disregard of sec. 328.21(6) (a). Second, although sec. 328.21(6)(b) authorizes the department to consider "information provided by informants," the record does not establish that the department tested the "information" on which it acted by asking for any detail whatsoever. Third, the record shows that the probation staff did not try to evaluate the reliability of the detective's information or corroborate the tip in any manner, in violation of sec. 328.21(6) (c). Fourth, the record lacks any suggestion that the probation officers tried to evaluate the reliability of their informant, in disregard of sec. 328.21(6)(d). Fifth, the record shows no reason for the department to conclude from Griffin's past activities that he might possess a gun in his apartment, as required by sec. 328.21(3)(e). Sixth, the record lacks any indication that Griffin provided the probation department any information relevant to whether he possessed a gun, as required by sec. 328.21(6)(f). Seventh, nothing in the record shows that the probation staff relied on experience with Griffin or another probationer in similar circumstances to justify a search, as sec. 328.21(6)(g) permits. Eighth, the record does not show any prior seizures of guns from Griffin, which might make a search reasonable under sec. 328.21(6)(h). Finally, there is no fact in this record which suggests that the department justified its search of Griffin's apartment by any specific need to verify whether he was complying with the rules of his supervision or state and federal law, which sec. 328.21(6)(i) allows.

For this reason, I cannot conclude that the search of Griffin's apartment meets even the minimal standard which the majority now adopts.