ANN WALSH BRADLEY, J.
¶ 34. (dissenting.) The State of Wisconsin seeks review of an unpublished decision of the court of appeals that reversed the defendant's conviction. In reinstating the defendant's conviction, the majority rides two analytical horses.
¶ 35. In one, the majority frames an analysis to suggest that because the computer was lawfully seized as contraband, the contents of the computer can be searched without a warrant. Majority op., ¶¶ 28-29. This brief discussion, set forth in a mere two paragraphs, is short on legal analysis but striking in the length of its legal reach.
¶ 36. In its other analytical approach, the majority concludes that the record demonstrates that the agent had reasonable grounds to believe the computer contained contraband. Majority op., ¶ 20. In order to reach this conclusion, the majority relies on prohibited actions, rather than the possession of prohibited items. It fails to recognize that "actions" do not fall within the definition of "contraband."
¶ 37. Like the unanimous court of appeals, I determine that the search of the contents of the computer was not supported by reasonable grounds to believe that the computer contained contraband. Additionally, I conclude that a lawful seizure of a computer as contraband does not give license to search its contents without a warrant. Accordingly, I respectfully dissent.
I
¶ 38. At issue in this case is a probation agent's warrantless search of a probationer's computer. Purtell argues that although his computers were lawfully *241 seized as contraband, Agent Anderson's search of the contents of one of the computers constituted an independent, governmental search that violated his Fourth Amendment privacy interests. In its first conclusion, the majority determines that because the computer was lawfully seized as contraband, its contents could be searched without a warrant.
¶ 39. The analysis in support of this conclusion is set forth in a mere two paragraphs. At the outset, the majority opines that "it is difficult to imagine a scenario where a probation agent would lack reasonable grounds to search an item the probationer is explicitly prohibited from possessing." Id., ¶ 28. It ends the analysis with a conjecture and abrupt conclusion: if there "would ever conceivably" be such a scenario, it is not this case. Id., ¶ 30.
¶ 40. It is unclear why the majority finds it so "difficult to imagine such a scenario" and that it would be virtually inconceivable. One need look only to one of the most legally debated issues of the day: whether the search of the contents of a legally seized computer is constitutionally permissible without a warrant.
¶ 41. The United States Supreme Court recently weighed in on this issue in the context of the search of the contents of a cellphone. Riley v. California, 573 U.S. _, 134 S. Ct. 2473 (2014). In a decision that is being heralded as an important statement on privacy rights in the digital age, the unanimous court concluded that "officers must generally secure a warrant before conducting" a search of data on cell phones. Id. at 2485.
¶ 42. Although Riley was decided in the context of a search of a cell phone, the court observed that the "term 'cell phone' is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone." *242 Id. at 2489.[1] Furthermore, "the possible intrusion on privacy is not limited in the same way" as a search of other physical objects, given their "immense storage capacity" which has "several interrelated consequences for privacy." Id. at 2489.
¶ 43. The fact that the primacy of these privacy rights has been recently reaffirmed, even for those with reduced privacy interests, makes the majority's decision all the more troubling. As Justice Roberts explained, Fourth Amendment rights apply also to those with diminished privacy rights. The existence of "diminished privacy interests":
does not mean that the Fourth Amendment falls out of the picture entirely. Not every search "is acceptable solely because a person is in custody." To the contrary, when "privacy-related concerns are weighty enough" a "search may require a warrant, notwithstanding the diminished expectations of privacy of the arrestee."
Id. at 2488 (citations omitted).
¶ 44. Regardless of whether the majority's analysis is hampered by its self-proclaimed difficulty in imagination or some other impediment, it is surprising that the majority gives the issue such short shrift.
¶ 45. It bears noting that all parties agree that the search of Purtell's residence (the group home) was *243 permissible. The agent had reason to believe, based on communication with the group home, that Purtell possessed computers in violation of his rules of probation. Computers were the contraband, and computers were seized. The focus of this inquiry is not whether there were reasonable grounds to search the residence or seize the computers, but whether there were independent grounds to search the contents of one of the computers without a warrant.
¶ 46. The majority glosses over this analytical distinction, despite our precedent establishing that under the Fourth Amendment, each warrantless search must be analyzed separately. State v. Carroll, 2010 WI 8, ¶ 16, 322 Wis. 2d 299, 778 N.W.2d 1 ("[W]e assess the legality under the Fourth Amendment of each warrant-less search or seizure that produced the evidence.").[2]
¶ 47. For example, in State v. Sobczak, 2013 WI 52, ¶ 30, 347 Wis. 2d 724, 833 N.W.2d 59, the court determined that although a third party's consent provided constitutional authority for a warrantless entry into a home, a separate analysis was needed to determine whether that third party consent allowed for a search of a laptop in the home. The court explained that "[t]o validate the search of an object within a home on consent, the government must satisfy the same requirements as apply to consent to enter." Id., ¶ 31.
¶ 48. This concept is also illustrated by Carroll. In Carroll, a police officer handcuffed Carroll after a high-speed chase, and then grabbed a cell phone that *244 Carroll had dropped. 322 Wis. 2d 299, ¶¶ 5-6. While the officer had the phone, it rang, and the officer answered. The caller made a request to purchase cocaine. The officer also browsed through the contents of the phone, including the phone's image gallery. On appeal, this court addressed the question of whether the officer's warrantless search of the phone's image gallery was constitutional. Id., ¶ 2. The court determined that even though the seizure of the phone and subsequent phone calls that the officer answered were constitutionally permissible, browsing through the phone's image gallery was improper. Id., ¶ 33. These cases demonstrate that a separate Fourth Amendment analysis is required to determine if a lawfully seized item can be searched without a warrant.
¶ 49. Due to the personal nature of the data contained on a computer and the weighty privacy concerns inherent in a search of that data, it is particularly important that a court conduct a separate analysis to determine if there are reasonable grounds to justify the search. By ignoring precedent and suggesting that once property is seized it can be searched, the majority greatly reduces not only the privacy rights of probationers, but the privacy rights of the millions of people who own cellphones, computers, and similar electronic devices.
II
¶ 50. Although the majority ultimately conducts an analysis of whether there were reasonable grounds to search the contents of the computer, after suggesting one is not necessary, its analysis is unconvincing. The majority concludes that the probation agent in this case had "reasonable grounds for believing Purtell's computers contained contraband, such as correspondence with *245 underage girls or additional Myspace accounts." Majority op., ¶ 32. In reaching this conclusion, the majority fails to take into account the definition of the word "contraband."
¶ 51. Wisconsin probation regulations permit a probation agent to search a probationer's property "if there are reasonable grounds to believe that the quarters or property contain contraband." Wis. Admin. Code § DOC 328.21 (Dec. 2006). "Contraband" is defined as "[a]ny item which the client may not possess under the rules or conditions of the client's supervision; or ... any item whose possession is forbidden by law." Wis. Admin. Code § DOC 328.21.
¶ 52. The majority lists the relevant conditions of Purtell's supervision as follows:
• He could not purchase, possess, nor use a computer, software, hardware, nor a modem without prior agent approval;
• he was prohibited from maintaining a Myspace.com account;
• he was prohibited from having any contact with animals; and
• he was prohibited from having any unsupervised contact with children.
Majority op., ¶ 6. The only item that these conditions prohibit Purtell from possessing is a computer.
¶ 53. The majority's suggestion that the computer could contain "correspondence with underage girls" appears related to Agent Anderson's testimony that Purtell's Myspace page and personal papers indicated he was attempting to start a relationship with a fifteen- *246 year-old girl. Id., ¶¶ 6-7. However, this is not contraband. Although evidence of contact with teenage girls could be circumstantial evidence of a probation violation, it is not "an item which the client may not possess under the rules or conditions of probation" or may not possess under the law.
¶ 54. The other items the majority suggests could be contraband on Purtell's computer are "other Mys-pace accounts." Id., ¶ 32. This is unpersuasive for two reasons. First, as the circuit court noted, Agent Anderson could check his Myspace activity "separately because she had his password and had done that on her own without the computers." Second, it is far from clear that a Myspace.com account is "an item which the client may not possess under the rules or conditions of probation." Wis. Admin. Code § DOC 328.21(3) (emphasis supplied). It appears from the conditions of his probation that Purtell was prohibited from "maintaining a Myspace.com account." This condition addresses an action rather than possession of an item. A prohibited action does not fall within the definition of contraband.
¶ 55. Accordingly, the majority's assertions are disconnected from Purtell's actual conditions of supervision, and its reliance on actions that are outside the definition of contraband cannot provide a legal basis for the warrantless search. Contrary to the majority, I conclude that the warrantless search of Purtell's computer after it had been seized was unreasonable because Agent Anderson did not have reasonable grounds to believe that it contained contraband.
Ill
¶ 56. In sum, I conclude that the warrantless search of Purtell's computer violated his privacy rights under the Fourth Amendment of the Constitution. The *247 majority's analysis suggests that any item seized can be searched and presents an erroneous understanding of what constitutes contraband.
¶ 57. Because I disagree with the majority's conclusion that there were reasonable grounds to believe that Purtell's computer contained contraband and with its assertion that the lawful seizure of a computer gives license to search its contents, I respectfully dissent.
¶ 58. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.

 Likewise, the Seventh Circuit has acknowledged that cellphones are the equivalent of a computer. United States v. Flores-Lopez, 670 F.3d 803, 805 (7th Cir. 2012) ("Judges are becoming aware that a computer (and remember that a modern cell phone is a computer) is not just another purse or address book.. .. computers hold so much personal and sensitive information touching on many private aspects of life.. . . [T]here is a far greater potential for the 'intermingling1 of documents and a consequent invasion of privacy when police execute a search for evidence on a computer.").

 This framework is applicable even though a different Fourth Amendment standard applies to searches of probationers in Wisconsin. See State v. Griffin, 131 Wis. 2d 41, 57, 388 N.W 2d 535 (1986), aff'd, 483 U.S. 868 (1987) ("Though a probationer has a diminished expectation of privacy, he still has privacy rights that must be respected.").